UNITED STATES of America, Appellee,

v.

George John McCARTY, Jr., Appellant.

No. 79–1227.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1979.

Decided Nov. 30, 1979.

Steve L. Jorgensen, Sioux Falls, S. D., for appellant.

Shelley M. Stump, Asst. U. S. Atty., Sioux Falls, S. D., for appellee; Robert D. Hiaring, U. S. Atty., Sioux Falls, S. D. and Thomas E. Adams, Legal Intern, on brief.

Before BRIGHT, ROSS and STEPHENSON, Circuit Judges.

ROSS, Circuit Judge.

George John McCarty, Jr., appeals from his conviction [1] for conspiracy and obstruction of justice in violation of 18 U.S.C. §§ 371 and 1503.[2]

McCarty was charged with conspiracy to corrupt justice by willfully injuring a prospective material witness in a federal trial on charges then pending against McCarty. Daniel James Gramberg, the key prosecution witness, testified that McCarty approached him with a plan to murder the witness. At the time, McCarty and Gramberg were cellmates incarcerated in the Minnehaha County Jail in Sioux Falls, South Dakota. Gramberg testified that he agreed to commit the murder. In return, McCarty had an attorney visit Gramberg for the purpose of securing his release from the county jail. Pursuing legal alternatives became unnecessary, however, as Gramberg was soon transferred to the Veterans Administration Hospital for medical reasons. While at the hospital, McCarty gave Gram-

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

2. McCarty received two concurrent five year sentences to run consecutively with a previous ten year federal sentence for the interstate transportation of stolen property.

berg $300 to fly to Phoenix to finalize the details of the murder. He then rented a car and left it in the hospital parking lot for Gramberg's use in fleeing the authorities. Gramberg drove from South Dakota to Iowa, but did not fly to Phoenix as planned.

On appeal, McCarty contends: (1) that the government failed to prove the existence of an agreement to conspire; (2) that an alleged overt act was not properly before the jury; and (3) that the evidence was insufficient to sustain his conviction. We affirm.

### I. The Agreement to Conspire

■ McCarty first asserts that the government failed to establish the existence of a conspiracy agreement. We disagree.

■ A conspiracy "consists of an agreement between the conspirators to commit an offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy." *United States v. Skillman,* 442 F.2d 542, 547 (8th Cir.), *cert. denied,* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). The agreement need not be formal or express. *United States v. Taylor,* 599 F.2d 832, 838 (8th Cir. 1979); *United States v. Pelton,* 578 F.2d 701, 712 (8th Cir.), *cert. denied,* 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978). Rather, a tacit understanding is sufficient to create a conspiracy. *Nilva v. United States,* 212 F.2d 115, 121 (8th Cir. 1954).

■ McCarty urges that no agreement was reached because the plans were never finalized in Phoenix. However, there is no necessity that the conspiracy be carried to fruition or even to the final stages of planning. Likewise the defendant need not have knowledge of every detail or phase of a conspiracy; knowledge of the essential nature of the conspiracy and the defendant's connection therewith is sufficient to convict. *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947).

■ In the alternative, McCarty contends that Gramberg merely feigned agreement,[3] never intending to harm the witness. *United States v. Moss,* 591 F.2d 428, 434 n.8 (8th Cir. 1979). This contention is belied by the record. On direct examination Gramberg testified as follows:

Q. Then did you and George have any further discussions about killing this witness?

A. Yes. Me and George discussed it. Exactly, me and George were leaning up against the rack and he said, "The only way I could possibly get out of this is to have him murdered—have the witness murdered."

And I told him that for a few favors, I would do this.

Q. Did you discuss with Mr. McCarty in the jail the manner or method of how this was going to be done?

A. Yes.

Q. Tell us about those conversations as closely as you recall them, and use the exact conversations of what was said about that.

A. Jim—excuse me—George asked me of what I thought possibly would be the best way to murder the man, and he brought up a rifle. I told him that that would be really messy and it would show that the man was murdered, and the other thing was hitting him over the head and feeding him to the hogs or having some accident of some sort.

Q. As far as you were concerned at this point, were these serious discussions?

A. Yes, sir.

This testimony, taken in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), clearly establishes the existence of the conspiracy agreement and, if believed, indicates that both parties entered the agreement seriously intending to murder the witness. It was within the right of the jury to believe Gramberg's

---

**3.** There was some testimony on cross-examination to the effect that Gramberg had attempted to abandon the conspiracy. Apparently, the jury chose to credit Gramberg's original account of the conspiracy given on direct examination, as it was entitled to do.

testimony that a conspiracy to murder the witness had been formed and to disbelieve McCarty's testimony to the contrary.[4]

## II. Jury Instructions

Alleged overt act number one as contained in the indictment reads:

On or about September 1977, Daniel Grambert [sic] and George John McCarty, Jr. met with one another in the Minnehaha County Jail and George McCarty offered his assistance in getting· Daniel Grambert [sic] out of jail so that Grambert [sic] could kill John Moeller for George McCarty.[5]

McCarty submits that the trial court erred in instructing the jury as to this act. He contends that this meeting was either to plan the conspiracy or to agree to it and as such, may not be considered an overt act in furtherance of the conspiracy. This argument fails in light of our conclusion that the government established the agreement element of the conspiracy. It was necessary that Gramberg be released from jail in order to carry out the object of the conspiracy. To that end, McCarty's assistance in securing Gramberg's release was an act in furtherance of the conspiracy which was properly submitted to the jury.

## III. Sufficiency of the Evidence

McCarty asserts that the evidence of three alleged overt acts was insufficient to warrant their submission to the jury: (1) Gramberg's placement of a phone call to McCarty's brother, an alleged coconspirator, to facilitate McCarty in contacting Gramberg; (2) the transfer of flight money from McCarty to Gramberg; and (3) Gramberg's sojourn from South Dakota to Iowa in a car rented by McCarty. Specifically, McCarty contends that none of these acts was in furtherance of the alleged conspiracy.

In order to sustain a conspiracy conviction the government need not prove the occurrence of every overt act alleged in the indictment; proof of one overt act in furtherance of the conspiracy will suffice. *United States v. Brown,* 604 F.2d 557, 560 (8th Cir. 1979); *United States v. Parker,* 586 F.2d 1253, 1258 n.2 (8th Cir. 1978). The overt act need not be criminal in nature, so long as it furthers the object of the conspiracy. *United States v. Bass,* 472 F.2d 207, 213 (8th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973).

We have repeatedly stated that "once the government has established the existence of a conspiracy, even slight evidence connecting a particular defendant to the conspiracy may be substantial and therefore sufficient proof of the defendant's involvement in the scheme." *United States v. Cox,* 580 F.2d 317, 323 (8th Cir. 1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979), *quoting United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974); *United States v. Wyant,* 576 F.2d 1312, 1316 (8th Cir. 1978). Substantial evidence was adduced at trial to establish each of the overt acts alleged. It was proper for the district court to submit those acts for the jury's consideration.

McCarty's final contention is that the evidence was insufficient to sustain his conviction for obstruction of justice. In considering this contention, we must view the evidence in the light most favorable to the verdict rendered. *Glasser v. United States, supra,* 315 U.S. at 80, 62 S.Ct. 457. Accordingly, this court must accept all reasonable inferences which tend to support the jury's verdict. *United States v. Overshon, supra,* 494 F.2d at 896. The statute proscribing an obstruction of justice, 18 U.S.C. § 1503, provides in pertinent part:

---

4. Indeed, the uncorroborated testimony of an accomplice is sufficient to sustain a conviction if it is not otherwise incredible or unsubstantial on its face. *United States v. Abrahamson,* 568 F.2d 604, 607 (8th Cir. 1978); *United States v. Knight,* 547 F.2d 75, 76 (8th Cir. 1976). Gramberg's testimony is neither incredible nor un-

substantial. Moreover, it was buttressed by the corroborating testimony of other witnesses who overheard these jailhouse conversations.

5. Although inarticulately stated, the gist of the overt act alleged was McCarty's assistance in freeing Gramberg from jail.

Whoever corruptly, or by threats or force, or by any threatening letter or communication, *endeavors* to influence, intimidate, or impede any witness, in any court of the United States * * * in the discharge of his duty * * * or corruptly or by threats or force * * * influences, obstructs, or impedes, or *endeavors* to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

(Emphasis added.)

 Success is not a prerequisite to conviction for obstruction of justice. *Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966). All that must be proved is that the defendant "endeavored" to obstruct justice. *Id.; United States v. Russell,* 255 U.S. 138, 143, 41 S.Ct. 260, 65 L.Ed. 553 (1921). In the instant case, substantial evidence was introduced to establish that McCarty arranged to have a prospective government witness murdered.[6] McCarty not only gave the potential murderer money, *United States v. Mitchell,* 514 F.2d 758, 760 (6th Cir.), *cert. denied,* 423 U.S. 847, 96 S.Ct. 86, 46 L.Ed.2d 68 (1975), but additionally devised and helped implement his escape from the authorities. On these facts, the jury was justified in concluding that McCarty "endeavored" to obstruct justice.

Accordingly, we affirm the judgment of the district court.

---

6. *See, e. g., United States v. Missler,* 414 F.2d 1293, 1306 (4th Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 912, 25 L.Ed.2d 93 (1970) (holding that "[t]here can be no question that a person 'endeavors' to obstruct justice when he arranges to have a prospective government witness murdered.").