**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harvey I. SILVERMAN,**
**Defendant-Appellant.**

**No. 82–5903.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 5, 1984.

Lyons & Farrar, P.A., Marsha L. Lyons, Coral Gables, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and CLARK, Circuit Judges, and GOLDBERG *, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

Harvey I. Silverman, an attorney, appeals his conviction, following trial by jury, of the crime of corruptly endeavoring to influence, obstruct or impede the due administration of justice. 18 U.S.C. § 1503 (1976).[1] We find no reversible error and accordingly affirm.

## I.

Harvey I. Silverman is a thirty-nine year old attorney practicing law in Tamarac, Florida. In February 1981, Carlos Angel Munoz hired Silverman to represent him, his wife and his two brothers on several federal criminal charges stemming from

---

* Honorable Irving L. Goldberg, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

**1.** 18 U.S.C. § 1503 (1976) provides, in pertinent part:

Whoever ... corruptly or by threats or force, or by any threatening letter or communication ... endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5000 or imprisoned not more than five years, or both.

their participation in the "Mariel boatlift."[2] On the combined offenses, Munoz faced a possible maximum prison sentence of thirteen years, six months, plus a fine of $515,500; his wife and two brothers each faced a possible maximum prison sentence of five years, six months, plus a $10,500 fine. Silverman had previously represented Munoz in civil actions connected with the boatlift.

Prior to the Munoz trial, Silverman entered into plea negotiations with the prosecutor, Assistant U.S. Attorney William Norris. Norris told Silverman that if Carlos Angel Munoz would plead guilty to one of the major offenses charged, his two brothers and his wife would be allowed to plead guilty to a lesser offense, and the remaining charges against all four defendants would be dismissed. Norris stated that he did not know what type of sentence Munoz could expect but that the others would likely receive six months probation. Norris also stated that he would make no sentencing recommendation and that the final decision would be strictly up to the judge. Silverman asked Norris' opinion of whether the judge might be lenient if Munoz made restitution to the Cuban families who paid him to transport their relatives from Cuba. Norris opined that restitution might make a difference, but cautioned Silverman that he had nothing on which to base his opinion.

After this conversation with the prosecutor, Silverman attempted to extort money from Munoz by telling him that he could "fix" the case for $25,000. Silverman told Munoz that the money would be paid to "some very powerful people" with connections in the Department of Justice, who would ensure that if he and his brothers pled guilty they would receive sentences of probation rather than imprisonment, and the case against his wife would be dismissed. Silverman's statement was false; he did not intend to pay anyone.

Silverman moved quickly to carry out his scheme. He went to Munoz' home accompanied by two unidentified men and introduced them as the recipients of the $25,000. The men told Munoz that they had already fixed the case and if he failed to pay the money he and his wife would go to jail and his brothers would be deported. These threats frightened Munoz. In an effort to protect himself, he purchased a tape recorder and recorded his subsequent telephone conversations with Silverman. These taped conversations confirmed Silverman's scheme. Munoz took the recordings to the district judge presiding over his case who, in turn, referred Munoz to the F.B.I. Munoz thereafter recorded additional conversations with Silverman, all under the supervision of the F.B.I.[3]

**2.** Carlos Angel Munoz, his wife, and his two brothers had been indicted in the Southern District of Florida on multiple counts. Count I charged all four defendants with conspiracy to transport illegally Cuban nationals into the United States, in violation of 50 U.S.C. app. § 5(b) (1982) and 18 U.S.C. § 371 (1982). This crime carried a maximum sentence of five years in prison and a $10,000 fine, or both. Count III charged them with aiding and abetting the illegal entry of aliens into the United States, in violation of 8 U.S.C. § 1325 (1982) and 18 U.S.C. § 2 (1982). The maximum sentence for this crime was six months in prison and a $500 fine, or both.

Carlos Angel Munoz was also charged individually in two other counts of the indictment. Count II charged him with illegal foreign currency exchange transactions with Cuba, in violation of 50 U.S.C. app. § 5(b) (1982) and 31 U.S.C. § 1059 (1976). The maximum sentence for this offense was five years in prison and a $500,000 fine. Count IV charged him with pri-

vate correspondence with a foreign government with intent to influence that government's dispute with the United States, in violation of 18 U.S.C. § 953 (1982). The maximum penalty for this offense was three years in prison and a $5,000 fine, or both.

**3.** The tape-recorded telephone conversations between Silverman and Munoz corroborated Munoz' claim that Silverman had solicited $25,000 under the pretext of using it as a bribe to guarantee that Munoz and his brothers would receive probation upon pleading guilty and his wife would go free. The following excerpts from the recordings of these conversations illustrated their persuasive value:

Munoz: I explained the problem to my uncle

Silverman: Right

\* \* \*

Munoz: I told him that these people guarantee me O.K., that if I pay them this money, you know, my wife will be out

On August 13, 1981, a federal grand jury indicted Silverman, charging him with willfully and corruptly endeavoring to obstruct and impede the due administration of justice, in violation of 18 U.S.C. § 1503 (1976).[4] Silverman moved to dismiss the indictment for failure to allege the elements necessary to establish a violation of that statute. His motion was denied.

Silverman went to trial on June 7, 1982.[5] The government established the facts we have set forth, and Silverman attempted to clothe them with an innocent explanation.

Silverman: Right

Munoz: My brothers will be out

Silverman: No, your brothers will get probation

Munoz: My brothers get probation and I get probation for 2 years

Silverman: Well 2–3 years. That I don't know

Munoz: 2, 2

Silverman: That doesn't matter

\* \* \*

Munoz: O.K. with that 25 thousand dollar we'll insured, O.K., that the deal will go through

Silverman: Right

\* \* \*

Munoz: So if this guy's give 25 thousand dollars to, to this guy so I get, I get, I get my probation. That's all I wanta know

Silverman: Yeah

Munoz: O.K.? Is that for sure?

Silverman: That's as sure as, uh, I can't talk on the phone. Yeah it's for sure.

\* \* \*

Munoz: Have these guys really got any power or are they bullshitters, you know?

\* \* \*

Silverman: These guys are as strong as you can get.

Munoz: Is that right?

Silverman: It's not them personally

Munoz: It's the people that they know.

Silverman: The ones who they work for.

Munoz: O.K. as long as they can assure me that the judge ain't going to give me no jail. That's all I want. You know? So, because that's what scare the shit, the shit outta ... this afternoon.

\* \* \*

Silverman: If there's no deal, you get 13 years.

Munoz: If there's no deal, we ..., with these guys with the money?

Silverman: That's right. You can get 13 years.

\* \* \*

Munoz: My uncle wants to be sure that I going to get off, man. That's all. You know?

Silverman: If you give him, if you come through today, the answer is yes.

\* \* \*

Munoz: O.K., I know, they told her, you know, that already have made the contacts, O.K.? They told them that if we don't, you know, now that we have to pay, and if we don't pay, she was going to jail

Silverman: They told her the truth.

Munoz: My brother was going to be deported

Silverman: That's true.

Munoz: and I was going to be serving 3 to 4 years in jail. O.K.? And, ah, that the only way to stop it is by them giving the money to their contact and then everything was going to be fine

Silverman: Uh huh

\* \* \*

Munoz: Oh, the guy didn't act too friendly, you know?

Silverman: Hey, they are not the friendliest people. They're honorable. They're not ... Once they're your friends they'll do anything for you. They are great people to know and have on your side.

Munoz: Is that right?

Silverman: Yeah. Remember, ah, I don't want to talk on the phone, but there was once a theft from the Museum of Art of that sapphire diamond?

Munoz: Yeah

Silverman: O.K., that was taken care of.

Munoz: And the guy got off.

Silverman: Yeah

\* \* \*

Munoz: So you think with those 25,000 everything is clean, right?

Silverman: Oh, yes, I have absolutely no doubt, Charlie. I wouldn't lie to you

\* \* \*

Munoz: ... Hey let me, let me ask you something. The judge or [Assistant U.S. Attorney] Norris are are not getting, you know, they don't have anything to do with me right?

Silverman: The ju ..., Nor ..., Norris will recommend what I recommend to the judge

Munoz: So Nor ..., Norris gettin, Norris getting the bread, you son of a bitch

Silverman: I, I have absolutely no idea. I don't even ask that question. It's dangerous for me to ask. It's not my business

4. This was Silverman's second indictment. The first, returned May 21, 1981, was dismissed on July 20, 1981, without prejudice for failure to allege sufficiently specific facts.

5. Silverman's case first went to trial on March 16, 1982, and resulted in a hung jury. We are therefore concerned with his retrial on June 7, 1982.

Testifying in his own defense, he admitted asking Munoz for $25,000 but said that the money was to be paid as restitution to the Cuban families who had contracted with Munoz to transport their relatives from Cuba in the Mariel boatlift. Silverman's testimony was heavily impeached on cross-examination, in part with the incriminating tape recordings Munoz had made. In an attempt to rehabilitate himself, Silverman presented the testimony of several character witnesses, who vouched for his truthfulness. The government, in rebuttal, countered this character evidence with the testimony of a lawyer and one of Silverman's former clients, who opined that he was unworthy of belief. The jury found Silverman guilty as charged.

## II.

Silverman presents five claims of error in this appeal. First, the indictment failed to allege the elements of an 18 U.S.C. § 1503 (1976) offense. Second, the evidence was insufficient to support his conviction. Third, the court erred in refusing to grant his requested jury instruction on the elements of the offense. Fourth, the prosecutor improperly subpoenaed him to produce confidential complaints of unethical conduct made against him by former clients and The Florida Bar. Fifth, various other trial errors combined to deny him a fair trial. We consider these claims in order.

## A.

■ Silverman contends that the court erred in denying his motion to dismiss the indictment because it failed to allege a violation of 18 U.S.C. § 1503 (1976). We find no error. The sixth amendment guarantees every defendant the right to be informed of the government's accusation against him. *Russell v. United States*, 369 U.S. 749, 761, 82 S.Ct. 1038, 1045, 8 L.Ed.2d 240 (1962). The accusation must be legally sufficient, i.e., it must assert facts which in law amount to an offense and which, if

proved, would establish prima facie the accused's commission of that offense. *Fleisher v. United States*, 302 U.S. 218, 58 S.Ct. 148, 82 L.Ed. 208 (1937); *United States v. Haas*, 583 F.2d 216, 219 (5th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979).[6] As Fed. R.Crim.P. 7(c) provides, an indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged."

■ The three essential elements of the type of 18 U.S.C. § 1503 (1976) offense presented here are that the accused (1) corruptly or by threats, (2) endeavored, (3) to influence, obstruct, or impede the due administration of justice. *United States v. Fasolino*, 586 F.2d 939, 940 (2d Cir.1978). Silverman contends that the indictment failed sufficiently to allege the second and third elements: that he endeavored to have Munoz take any action to influence, obstruct, or impede the due administration of justice.

The validity of an indictment is determined by reading it as a whole, giving practical effect to its language. *United States v. Haas*, 583 F.2d at 219. The indictment stated, in pertinent part, that

> Harvey I. Silverman, falsely represented to Carlos Munoz that, if Carlos Munoz paid him money, he would pay it to powerful and dangerous people who could assure that, if Carlos Angel Munoz and his brothers pled guilty [to the indictment in their case], they would receive sentences of probation rather than imprisonment. He further falsely represented that, if the money were paid, charges would be dropped completely against [Munoz' wife].

In other words, the indictment charged Silverman with corruptly trying to induce his clients to plead guilty under the delusion that their criminal proceedings had been "fixed." The test is not whether the

---

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

indictment might have been drawn with greater exactitude, but rather whether it conformed to the minimal constitutional requirements. *United States v. London,* 550 F.2d 206, 211 (5th Cir.1977). With this in mind, we consider whether the indictment alleged the second and third elements of a section 1503 offense.

### 1.

▆ "Endeavor," as used in 18 U.S.C. § 1503 (1976), describes any effort or assay to accomplish the evil purpose the statute was enacted to prevent. *United States v. Russell,* 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921). Knowledge and intent are necessary to sustain a conviction under section 1503. *United States v. Haas,* 583 F.2d at 220. The government is not required to prove, however, that the defendant harbored the specific purpose of obstructing the due administration of justice; all the government has to establish is that the defendant should have reasonably foreseen that the natural and probable consequence of the success of his scheme would achieve precisely that result. *United States v. Neiswender,* 590 F.2d 1269, 1273 (4th Cir.), *cert. denied,* 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979); *accord United States v. Buffalano,* 727 F.2d 50, 54 (2d Cir.1984).

▆ In the present case, the indictment alleged that Silverman attempted to obtain money from Munoz under the pretext of fixing the case, so that he and his brothers, upon entering guilty pleas, would receive sentences of probation and his wife would go free. The natural and probable consequence, if not the desired consequence, of such conduct would be that the three men would plead guilty without disclosing the fix to the court. These facts, if proven, plainly constituted an "endeavor" for the purpose of 18 U.S.C. § 1503 (1976).

### 2.

▆ Section 1503 forbids interferences with the due administration of justice, i.e., judicial procedure. *United States v. Howard,* 569 F.2d 1331, 1337 (5th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 116, 58

L.Ed.2d 130 (1978). The statute reaches all corrupt conduct capable of producing an effect that prevents justice from being duly administered, regardless of the means employed. *Id.* at 1334. The statute aims "to prevent a miscarriage of justice." *United States v. Griffin,* 589 F.2d 200, 204 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979); *Samples v. United States,* 121 F.2d 263, 265 (5th Cir.), *cert. denied,* 314 U.S. 662, 62 S.Ct. 129, 86 L.Ed. 530 (1941).

The Fourth Circuit has held that an individual who sought to obtain $20,000 from the attorney representing a defendant in a criminal case under the pretext that he could guarantee an acquittal through juror manipulation could be convicted under section 1503. *United States v. Neiswender,* 590 F.2d 1269 (4th Cir.), *cert. denied,* 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979). The natural and probable consequence of such action would be to reduce the attorney's efforts in defending his client, thereby interfering with the due administration of justice. *Id.* The Second Circuit has similarly ruled that the attorney serving as a law secretary of a New York Supreme Court Justice could be convicted under section 1503 for trying to obtain money from an about-to-be-sentenced defendant upon the promise that he could ensure a lenient sentence. *United States v. Buffalano,* 727 F.2d 50 (2d Cir.1984). Such behavior had the "potential to lull an 'innocent victim' into a false sense of security, deterring him from taking an active role himself to secure a more favorable sentence," which could result in a miscarriage of justice. *Id.* at 54.

In the case at hand, the foreseeable result of Silverman's conduct was that each of his clients would tender a plea of guilty upon the mistaken belief that he had been guaranteed probation and thereby obstruct the due administration of justice. Silverman could anticipate that one of three scenarios would take place once the court placed his client under oath, *see Bryan v. United States,* 492 F.2d 775, 781 (5th Cir.) (en banc), *cert. denied,* 419 U.S. 1079, 95

S.Ct. 668, 42 L.Ed.2d 674 (1974), and commenced to interrogate him pursuant to Fed. R.Crim.P. 11 to determine whether his guilty plea was being made voluntarily and not as a result of force, threats, or promises, apart from those contained in the plea agreement which provided for the dismissal of the remaining counts of the indictment upon the court's acceptance of the defendant's plea. In each of these scenarios Silverman would have impeded the due administration of justice.

In the first scenario, the client, following Silverman's instructions, lies to the court, stating that his plea is voluntary and that no promises, other than those contained in his plea agreement, were made by anyone to induce it. The court accepts the plea, adjudges the defendant guilty, suspends the imposition of sentence, and places him on probation. The defendant satisfactorily completes his term of probation and never discloses Silverman's fix to the authorities. Silverman impedes the due administration of justice within the meaning of Section 1503 because he has suborned perjury,[7] *United States v. Partin,* 552 F.2d 621, 630–31 (5th Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977), and engaged in contemptuous conduct. *See, e.g., United States v. Howard,* 569 F.2d 1331, 1336 (5th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 116, 58

L.Ed.2d 130 (1978); *United States v. Walasek,* 527 F.2d 676, 680 (3d Cir.1975); *United States v. Essex,* 407 F.2d 214, 216–17 (6th Cir.1969).[8] Silverman has also impeded the due administration of justice by having Munoz involuntarily waive his fifth amendment right not to plead guilty and his sixth amendment right to demand a jury trial. The due administration of justice contemplates that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). Thus, corruptly coercing a defendant to waive such right during a judicial proceeding violates section 1503. *United States v. Buffalano,* 727 F.2d 50 (2d Cir.1984); *United States v. Neiswender,* 590 F.2d 1269 (4th Cir.), *cert. denied,* 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979).

In the second scenario, the same events as in the first take place, except that Munoz is sentenced to prison. He soon realizes that he has been swindled and moves the district court, pursuant to 28 U.S.C. § 2255 (1982), to set aside his conviction and sentence, alleging that they were the product of an involuntary guilty plea induced by Silverman's representation that a guaranteed sentence of probation had been purchased for $25,000. The court holds an

---

7. In order to constitute the offense of subornation of perjury, 18 U.S.C. § 1621 (1982), perjury must have been actually committed, *United States v. Brumley,* 560 F.2d 1268, 1278 n. 5 (5th Cir.1977); *United States v. Tanner,* 471 F.2d 128, 135 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972), as it has, by the defendant in the first and second scenarios. Silverman's attempt to procure the commission of perjury from his client, as in the third scenario, is separate and distinct from the subornation of perjury. 18 U.S.C. § 1503 (1976) proscribes the endeavor to obstruct or impede the due administration of justice; the success of the attempt to influence a witness is not a necessary element of the offense. *Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 434–5, 17 L.Ed.2d 394 (1966); *United States v. Baker,* 611 F.2d 964, 967 (4th Cir.1979); *United States v. McCarty,* 611 F.2d 220, 224 (8th Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980).

8. These cases hold that Silverman's out-of-court contemptuous conduct, as portrayed in these scenarios, is chargeable under 18 U.S.C. § 1503 (1976). Section 1503 originated with the Act of March 2, 1831, 4 Stat. 487. The 1831 Act was intended to be "declaratory of the law concerning contempts of court." Section 2 of the 1831 Act, the predecessor of Section 1503, provided that contemptuous conduct, i.e., obstruction of court proceedings, occurring beyond the preserve of courts, should be punishable by indictment and trial, with all the safeguards thereof.

Silverman's in-court contemptuous conduct, committed in the presence of the judge, is subject to summary punishment. Fed.R.Crim.P. 42(a). *Cf.* 18 U.S.C. § 402 (1982). Of course, the court would have to discern it, as in the third scenario. *See infra* p. 1394.

evidentiary hearing, concludes that the movant's allegations are true, vacates his conviction and sentence, and reinstates his not guilty plea. Here, Silverman has impeded the due administration as he did in the first scenario. In addition, he has burdened the court's docket with a section 2255 proceeding and a reinstated criminal prosecution and caused the U.S. Attorney, and probably the grand jury, to consider perjury, subornation of perjury, and criminal contempt proceedings against Silverman and his client.

In the third scenario, the client exposes Silverman's fix during the district court's rule 11 inquiry to determine the voluntariness of his tendered guilty plea or, as here, the client promptly reports Silverman's activities to the authorities. Silverman is indicted, and the client's case is delayed while the client obtains a new lawyer. The client, not trusting the system, rejects his new lawyer's advice to plead guilty and goes to trial.[9] Certainly, these events, both singularly and collectively, would burden the court and the prosecutor's office and waste scarce judicial and parajudicial resources. We think these are the types of events Congress sought to prevent when it enacted section 1503.

■■■ We must keep in mind that a section 1503 offense is complete when one corruptly *endeavors* to obstruct or impede the due administration of justice; the prosecution need not prove that the due administration of justice was actually obstructed or impeded. *Osborn v. United States*, 385 U.S. 323, 333, 87 S.Ct. 429, 434-5, 17 L.Ed.2d 394 (1966); *United States v. Russell*, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921). An ordinary lawyer engaging in the conduct Silverman was charged with here would know that one of the scenarios we have portrayed would come to pass and would adversely impinge upon the due administration of justice, in violation of 18 U.S.C. § 1503. The indictment plainly alleged the elements of the offense; accordingly Silverman's first claim fails.

### B.

■■■ Silverman contends that the evidence was insufficient to sustain a conviction. We disagree. Carlos Munoz testified about Silverman's shakedown scheme. The tape recordings fully substantiated Munoz' story. Reviewing all the evidence in the light most favorable to the jury verdict, as we must, we conclude that a reasonable jury could find that the evidence established Silverman's guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

### C.

■■■ Silverman claims that the trial judge erred in refusing to give his requested jury instructions on the essential elements of the offense.[10] We find no error. A district judge is vested with broad discretion in formulating his charge to the jury so long as it accurately reflects the law and the facts. *United States v. Borders*, 693 F.2d 1318, 1329 (11th Cir.1982), *cert. denied*, 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983). The charge must define the offense charged and its elements to enable the jury to apply the law to the

---

**9.** This is actually what occurred after Silverman's conduct was disclosed in this case. Munoz hired a new lawyer, pled not guilty to the four charges pending against him, *see supra* note 2, went to trial, was convicted, and was sentenced to prison for 30 months. That this disposition of Munoz' case came to pass had no bearing on Silverman's guilt in the proceedings below and is not dispositive of this appeal. We cite the disposition merely to show what Munoz did and that our third scenario is reasonable.

**10.** Silverman requested the following instruction, in pertinent part:

There are three essential elements which must be proved [by the government] beyond a reasonable doubt in order to establish the offense proscribed by the law:

*Second*, that the purpose and object of the endeavor by Harvey I. Silverman was to influence, obstruct, and impede the due administration of justice.

✻ ✻ ✻

facts. *Lott v. United States*, 218 F.2d 675, 681, n. 7 (5th Cir.1955), *cert. denied*, 351 U.S. 953, 76 S.Ct. 848, 100 L.Ed. 1477 (1956).

Here, the court's charge contained all the essential elements of the offense and, considered as a whole, allowed the jury to reach an informed verdict. The judge read the pertinent parts of the statute and the indictment. He then explained the operative words of the statute in the context of this particular case. The instruction left no doubt as to the circumstances under which the jury could find the crime to have been committed. ·

 The court is not required to "recite the jury instructions in the precise language requested by the defendant" where its charge adequately addresses the substance of the defendant's request. *United States v. Bizzard*, 674 F.2d 1382, 1389 (11th Cir.), *cert. denied*, 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982). Furthermore, the court is bound to refuse a requested instruction that is incomplete, erroneous, or misleading. *United States v. Diamond*, 430 F.2d 688, 694–95 (5th Cir. 1970); *United States v. Deaton*, 468 F.2d 541, 545 (5th Cir.1972), *cert. denied*, 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973). Silverman's proposed instruction incorrectly explained "specific intent": it placed the burden on the government to prove that the purpose and object of Silverman's endeavor was to influence or obstruct the due administration of justice.[11] This requirement was too demanding. The government needed only to show that the defendant had knowledge or notice that his conduct would have likely resulted in an obstruction of justice. *United States v. Neiswender*, 590 F.2d 1269, 1273 (4th Cir.),

*cert. denied*, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979); *accord United States v. Buffalano*, 727 F.2d 50, 53–54 (2d Cir. 1984). Such knowledge or notice is supplied by the reasonable foreseeability of the natural and *probable* consequences of one's acts.[12] *Id.* One violates section 1503 by knowingly and purposefully undertaking an act, the natural and probable consequence of which is to influence, obstruct, or impede the due administration of justice. We therefore reject Silverman's claim that the trial judge erred in charging the jury.

#### D.

 Silverman contends that the court erred by requiring him to comply with a contingent government subpoena duces tecum for complaints made against him by his former clients or The Florida Bar. The government subpoenaed these complaints prior to trial because it anticipated that Silverman would testify in defense and also present character witnesses, and it wanted the complaints for cross-examination purposes. Silverman moved to quash the subpoena, and the court heard argument on the motion during the government's case. The prosecutor reiterated his previously announced position that he would need the subpoenaed documents only in the event Silverman testified. Silverman argued in response that, even with this limitation, the subpoena, if enforced, would infringe upon his fifth amendment right against self-incrimination and the confidentiality accorded Florida Bar disciplinary proceedings. The court rejected his argument and denied his motion to quash.

In this appeal, Silverman urges us to accept the two-fold objection he made to

---

**11.** *See supra* note 10.

**12.** The trial court correctly charged, in pertinent part, that

 endeavor means to undertake an act or to attempt to effectuate an arrangement or to try to do something, the natural and probable consequences of which is to influence, obstruct or impede the due administration of justice.

 \* \* \*

 This crime, the crime charged in this particular case, is a crime which requires proof of specific intent before the defendant can be convicted.

 Specific intent, as that term means, is more than just the general intent to commit an act. To establish specific intent, the Government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law.

the trial judge and, in addition, a third objection he failed to make: Fed.R.Crim.P. 17, which controls the use of subpoenas in criminal cases, does not authorize the subpoena in question.[13] We are not persuaded. Rule 17 plainly authorized the subpoena and its enforcement after Silverman announced that he would take the stand and did not transgress the fifth amendment or Florida law.

#### 1.

Fed.R.Crim.P. 17(c) governs the issuance of subpoenas duces tecum in federal criminal proceedings. It provides:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

Silverman readily acknowledges, as he must, that the government's subpoena called for the production of matter literally covered by the rule; his objection is that the subpoena did not call for *evidentiary* matter. We disagree.

The Supreme Court, in *Bowman Dairy Co. v. United States*, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951), addressed the scope of material subject to subpoena under rule 17(c). It held, as Silverman correctly points out, that the rule was not intended to provide an additional means of discovery for any party in criminal cases. *Id.* at 220, 71 S.Ct. at 679. Rather, the rule only reaches specifically identified documents that will be admissible as evidence at

trial, provided that the application for the subpoena is made in good faith. *Id.* at 221, 71 S.Ct. at 679; *see United States v. Nixon*, 418 U.S. 683, 697–700, 94 S.Ct. 3090, 3102–03, 41 L.Ed.2d 1039 (1974). Whether a rule 17(c) subpoena has been issued in good faith and seeks evidence are mixed questions of fact and law. We will not disturb the trial judge's factual findings unless they are clearly erroneous; we will not set aside his decision to enforce the subpoena unless it is an abuse of discretion. *United States v. Nixon*, 418 U.S. at 702, 94 S.Ct. at 3104; *see, e.g.*, Fed.R.Evid. 104(a) and (b) and 403.

The subpoenaed complaints clearly possessed evidentiary potential for impeachment purposes if Silverman, in his testimony, denied that he had ever taken advantage of a client as he allegedly did in Munoz' case. *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir.1980), *cert. denied*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *see, e.g.*, Fed.R.Evid. 404(b), 405, and 608(b). Also, the complaints would have evidenced the prosecutor's good faith in cross-examining Silverman's character witnesses concerning specific incidents. *Michelson v. United States*, 335 U.S. 469, 482, 69 S.Ct. 213, 221, 93 L.Ed. 168 (1948); Fed.R.Evid. 405. We, therefore, conclude that the trial judge properly denied Silverman's motion to quash the government's subpoena.

#### 2.

Silverman claims that the government's subpoena violated his fifth amendment right against self-incrimination. Compliance with the subpoena, however, was completely contingent upon Silverman's choosing to testify. Once he voluntarily took the witness stand in his own defense, he waived his fifth amendment right and became obligated to answer all relevant questions. *United States v. Brannon*, 546 F.2d 1242, 1246 (5th Cir. 1977).

**13.** Silverman's failure to raise this objection at trial requires that he now demonstrate plain error which affected his substantial rights in order to obtain reversal. Fed.R.Crim.P. 52(b).

We treat this objection in the text, however, as if Silverman had preserved the point for appeal, and conclude that it is meritless. It thus follows that there is no plain error.

### 3.

■■■ Silverman's third challenge to the subpoena is that the complaints it sought were confidential under the rules of The Florida Bar. This contention is without merit. In disposing of Silverman's challenge, we assume that a complaint about a lawyer filed with The Florida Bar is confidential and unavailable for any purpose in a state civil or criminal proceeding, and that the lawyer complained of has standing to object, on grounds of privilege, to any disclosure or use of such a complaint. This body of state law notwithstanding, the district court was bound to follow Fed.R. Crim.P. 17(c) and to apply the Federal Rules of Evidence. In applying the latter, it was bound by Fed.R.Evid. 501's proscription of state law privileges in criminal cases. *United States v. Gillock*, 445 U.S. 360, 369, 100 S.Ct. 1185, 1191, 63 L.Ed.2d 454 (1980). In sum, The Florida Bar rules in question had no application in this case.

### E.

Silverman's final claim is that numerous district court errors combined to deny him a fair trial. We find no error in any of the episodes Silverman cites.

### 1.

■■■ Silverman contends that the court erred in excluding three pieces of evidence: Munoz' history of cocaine use, his arrest for issuing bad checks, and a composite exhibit of newspaper articles covering the Mariel boatlift. The trial judge determined that the proffered evidence was either irrelevant or was relevant but presented a danger of confusing or unfairly prejudicing the jury which substantially outweighed its probative value. Fed.R.Evid. 403. Such determinations rest largely with the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of discretion. *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983). The judge properly exercised his discretion in excluding each of the three pieces of evidence.

Silverman wanted to introduce Munoz' history of cocaine use to show that Munoz' recollection of critical events in issue was materially impaired. The government objected, and the court permitted Silverman to explore his point outside the presence of the jury. Munoz then testified that he had intermittently used cocaine from 1966 until early in 1981, when he realized that he had a potential drug problem and quit using it. He said that his cocaine use had caused him no mental problems and that he had a clear recollection of the events surrounding Silverman's conduct in this case. As the record bears out, Munoz had a fair recollection of these events, and it was consistent with what was disclosed by the tape recordings in evidence. Silverman was unable to show that Munoz's prior cocaine use had any effect on his perception of the events in issue or his ability to relate them accurately. Therefore, the judge, weighing the slight, if any, probative value of the cocaine use against its danger of prejudice and confusion to the jury, decided to exclude the evidence. The record fully supports his discretionary ruling.

Silverman wanted the jury to know that Munoz had previously obtained the dismissal of several criminal charges for issuing bad checks because he had made the checks good. According to Silverman, this evidence would have permitted the jury to infer that Silverman was telling the truth when he said that his conversations with Munoz about paying $25,000 dealt with paying restitution, not a bribe. The inference would be permissible, he argues, because Munoz knew that restitution could result in the dismissal of criminal charges, and he was consequently urging Silverman to explore that possibility in this case.

Silverman sought to introduce this bad check-restitution testimony while cross-examining Munoz during the government's case-in-chief. The government objected, and the court considered the matter in limine. It acknowledged that it would be highly beneficial to Silverman's case if Munoz, at the time of his dealings with Silverman, appreciated the mitigating effect making restitution might have on the disposition of criminal charges. The court was

concerned, however, that Silverman's planned line of cross-examination about Munoz' bad check arrests might inject so many collateral issues into the case that the jury would lose sight of its duty. The court therefore struck a compromise. Silverman could ask Munoz all about restitution and its potential mitigating role in a criminal case. If Munoz admitted knowing about restitution and its potential mitigating role in the disposition of a criminal case, Silverman could not delve into the bad check episodes. If he denied knowing about restitution, the door would be open for Silverman to explore further into the specifics of the bad check charges if necessary. As it turned out, Munoz readily admitted the potential influence of restitution upon the disposition of a criminal case. Silverman's proposed line of cross-examination about the bad checks, which the court precluded, would have proven nothing more except that Munoz was a bad person, a point prohibited by Fed.R.Evid. 404(a). The trial court's handling of this evidentiary problem was, in our view, eminently reasonable and a sound exercise of the discretion the rules of evidence accorded it.

Silverman sought to introduce the composite exhibit of newspaper articles concerning the Mariel boatlift to prove that he did not take the two unidentified men to Munoz' house to extort $25,000, as Munoz testified. The articles, he says, supported his explanation that the men came to Munoz' house to collect restitution for what Munoz had done. Silverman points to nothing in these newspaper articles that would have permitted the inference he would draw. The trial judge committed no error in excluding this evidence for want of relevance.

### 2.

At Silverman's request, the district court instructed the jury at the opening of trial concerning the significance of an indictment. The court explained the role of the grand jury in these words: "[The grand jury decides] two issues, one whether or not there is a likelihood that a crime was committed and, two, that there is the likelihood that the defendant may have committed that particular crime." The court also told the jury that an indictment is not evidence and was not to be held against the defendant. Silverman objected to the instruction and moved for a mistrial. The court correctly denied his motion. *See United States v. Strauss,* 678 F.2d 886, 890 (11th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982).

### 3.

The court refused to present Silverman's requested "theory of defense" instruction to the jury. The court adequately covered all portions of the requested instruction except the following: "However, in this case, evidence has been presented that Mr. Silverman was attempting to obtain monies from Carlos Munoz to make restitution in a civil case."

The court is under no obligation to give a proposed instruction which is adequately covered by other instructions. *United States v. Solomon,* 686 F.2d 863, 876 (11th Cir.1982); *United States v. L'Hoste,* 609 F.2d 796, 805 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). The defendant is entitled to a separate instruction specifically charging the jury on his theory of defense if that theory has legal and evidentiary foundation. *United States v. Williams,* 728 F.2d 1402, 1404 (11th Cir.1984). Calling a proposed instruction a "theory of defense", however, does not automatically force a court to give it. A court need not grant a requested instruction that does not concern issues properly before the jury or would tend to confuse it. *United States v. Malatesta,* 583 F.2d 748, 759 (5th Cir.1978), *modified on rehearing en banc,* 590 F.2d 1379 (5th Cir.), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777, and 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). The requested instruction must be a legally cognizable defense to the indictment.

*United States v. Barham*, 595 F.2d 231, 244–45 (5th Cir.1979), *cert. denied*, 450 U.S. 1002, 101 S.Ct. 1711, 68 L.Ed.2d 205 (1981). The court may disregard a requested instruction that merely emphasizes a certain phase of the evidence. *Id.* at 244–45; *United States v. Wayman*, 510 F.2d 1020, 1027 (5th Cir.), *cert. denied*, 423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975). The court, here, committed no error because the requested instruction only commented on evidence favorable to the defendant without presenting a true legal defense.

### 4.

██ Silverman contends that it was prejudicial error for the district court to allow the prosecutor to ask him the following question, during cross-examination and over his objection:

> Now, you don't dispute the fact that if you deliberately misled the Munoz family concerning the results that might happen to them if they pled guilty rather than going to trial, that that would constitute a very serious interference with the administration of justice.

He contends the question concerned the applicable law, which was the province of the judge, and the ultimate issue, which was to be decided by the jury.

Obviously, the prosecutor can elicit testimony from a witness which "embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704. Silverman, as a practicing member of the criminal bar and of the bar of the district court, plainly would be expected to know (and the jury could find that he knew) what effect his alleged conduct would probably have on the administration of justice in the Southern District of Florida. Such probable effect was a pure fact question, fully susceptible to proof through the expert opinion testimony of an experienced practitioner like Silverman. The district court correctly overruled his objection.

AFFIRMED.