United States Court of Appeals, Eleventh Circuit.

No. 94-5309.

UNITED STATES of America, Plaintiff-Appellee,

v.

Ronald A. BRENSON, Defendant-Appellant.

Feb. 5, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-23-CR-FAM), Federico A. Moreno, Judge.

Before TJOFLAT and COX, Circuit Judges, and HANCOCK[*], Senior District Judge.

HANCOCK, Senior District Judge:

Ronald A. Brenson was convicted of obstructing justice in violation of 18 U.S.C. § 1503 by corruptly endeavoring to influence, obstruct or impede the due administration of justice in the United States District Court for the Southern District of Florida. Brenson also was convicted of conspiring with one or more persons to violate 18 U.S.C. § 1503 by corruptly influencing, obstructing or impeding the due administration of justice in the United States District Court for the Southern District of Florida in violation of 18 U.S.C. § 371. Following his conviction, the district court sentenced Brenson to 120 months imprisonment, followed by two years of supervised release. Brenson now appeals his conviction on both counts and the sentence imposed. We find no reversible error as to his conviction on either count nor any error in the sentence imposed and accordingly affirm.

I. BACKGROUND

_____

[*]Honorable James H. Hancock, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

The evidence at the trial of this case provided the following factual information:   The United States District Court for the Southern District of Florida summoned Brenson to jury duty where he was selected and served as a member of a federal grand jury empaneled on February 16, 1993 that met once a week for approximately ten months.  (R10-61-62, 69, 70.)  All grand jurors, including Brenson, were given instructions by a United States district judge, viewed a videotape, and received a booklet concerning their duty to maintain secrecy as to the information disclosed during the grand jury proceeding and the importance of this confidentiality.  (R10-62 to 68, 91-92.)  The grand jury on which Brenson served was conducting an investigation of Armando "Mandy" Fernandez in connection with evidence of drug smuggling and money laundering.  (R10-95, 120-21;  R11-32.)

The grand jury of which Brenson was a member had been in session on November 4, 1993, but was not scheduled to convene again until November 18, 1993.  (R10-98.)  Some time between November 8 and 10, 1993, Brenson attempted to call Joseph DeMaria, who he knew to be an associate of Fernandez.  (R10-126, 14.)  Brenson called DeMaria at a car dealership known as The Collection on the pretense of wanting to purchase a Ferrari.  (R10-126.)  DeMaria instructed Brenson to come to The Collection and talk to him about the car.  (R10-126.)  Brenson took a bus and went in person to The Collection to meet with DeMaria.  (R10-126-27.)  Brenson told DeMaria that The Collection was under investigation and was going to be seized.  (R10-127.)  DeMaria responded in disbelief stating that The Collection had previously been seized and that it "was beyond the

statute of limitations." (R10-127.) Brenson then explained to DeMaria, "I should not be here, but I am a member of a Grand Jury that is investigating The Collection now and it is going to be seized." (R10-127.) Brenson provided DeMaria with additional information concerning the grand jury proceedings, including the dates it had met as well as identifying witnesses and information on assets presented as part of the investigation of Fernandez. (R10-128.)

DeMaria requested that Brenson "wait here." (R10-128.) Then DeMaria added "let me get somebody." (R11-23.) DeMaria proceeded up some stairs to the executive offices. (R10-128.) DeMaria returned with Fernandez, the target of the grand jury investigation and introduced him as "Mandy, the owner of The Collection." (R10-129.) DeMaria instructed Brenson to "tell him what you just told me." (R10-129.) Brenson then repeated to Fernandez the information he had learned as a grand jury member, including the names of individuals to be indicted, charges that would be filed, the names of witnesses who testified and properties that may be subject to forfeiture. (R10-129-33; R11-24 to 26.) In response to questions by DeMaria, Brenson confirmed the names of the prosecutors conducting the Fernandez investigation. (R10-132.) Brenson told DeMaria and Fernandez that the indictment against Fernandez and others would be returned on November 18, 1993. (R10-133.) As Brenson was leaving DeMaria stated the following: "We have to stay in touch with you. How can we get a hold of you?" In response, Brenson provided DeMaria with his beeper number. (R10-133.)

On November 18, 1993 the members of the grand jury, including Brenson, met to vote on the indictment of Fernandez and returned an indictment with Brenson voting in favor of the indictment. (R10-99, 108.) There was no evidence that Brenson attempted to get any member of the grand jury to change his or her vote as to the indictment. (R10-107.) After Fernandez was indicted and arrested, Special Agent Richard Kapouch of the Internal Revenue Service ("IRS") interviewed Fernandez and executed an affidavit for a complaint against and arrest warrant for Brenson based on his discussions with Fernandez. (R10-121.)

Brenson was arrested on January 20, 1994. (R10-122.) During the arrest, Agent Kapouch of the IRS and Agent James Gregorius of the Drug Enforcement Administration advised Brenson of his rights. (R10-123.) Then Brenson voluntarily agreed to waive his rights and speak to the agents. (R10-123.) Brenson admitted to disclosing secret grand jury information to both Fernandez and DeMaria. (R10-127 to 133.) According to Brenson, his motivation for disclosing the grand jury information was an attempt to get a date with DeMaria's daughter. (R11-6.) On January 27, 1994, a grand jury indicted Brenson on one count of conspiracy to obstruct the due administration of justice based on charges that Brenson conspired with DeMaria and Fernandez in violation of 18 U.S.C. § 371 and one count of endeavoring to obstruct the due administration of justice in violation of 18 U.S.C. § 1503. (R1-12.)

When the agents asked Brenson if he wanted to cooperate in an investigation of DeMaria, Brenson responded affirmatively. (R10-134-35; R11-33.) The agents instructed Brenson that he should not

alert anyone that he was in trouble, had been arrested or that he was cooperating.[1] (R10-137; R11-34.) The next day Brenson admitted to Agent Gregorius that he had alerted his friend, Mario Palacio, that he was in trouble and asked Palacio to "get word" to DeMaria that Brenson had been arrested, that he had been asked by federal agents to cooperate against DeMaria, and that DeMaria was now a target of an investigation. (R11-38, 39.)

Immediately before Brenson's trial was to begin, Brenson stated to the court that he wanted to change his plea to guilty on both counts. (R8-3.) Once the district court began the plea colloquy to establish that Brenson acknowledged his guilt as to the offenses charged, Brenson refused to admit that he acted "corruptly" when disclosing grand jury information to Fernandez and others. The district court would not accept Brenson's plea and there was a discussion between the district court, counsel for the parties and the defendant concerning the meaning of the term "corruptly." (R8-10 to 22.)

The case proceeded to a four day trial before a jury with the government presenting evidence concerning the required secrecy of grand jury information as well as evidence of the statements made by Brenson to government agents admitting that he had in fact revealed such secrets. Brenson presented three witnesses. Two attorneys, Howard Sohn and Yale Galanter, testified that they had spoken with Brenson on the evening of his arrest. (R11-109 to 111.) The third witness, David Lawrence, was a friend of Brenson

---

[1]Agent Gregorius testified that the warning did not prevent Brenson from contacting an attorney. (R11-101.)

who testified that Brenson came to his home on January 20, 1994, appearing "scared and confused" and Lawrence suggested that Brenson contact Lawrence's lawyer, Mr. Sohn. (R11-110, 118-19.)

Brenson moved for acquittal at the close of the government's case and at the close of the evidence, with both motions being denied by the district court. (R11-107 to 109, 121-122.) On August 26, 1994, counsel for both parties had a conference with the district court on the jury charges to be given by the court. (R11-122.) Both parties submitted proposed jury instructions on the substantive offense. (R-1-48; R-1-49; R10-15.) The court agreed to use the government's proposed instructions along with specific language from the *United States v. Thomas* decision, 916 F.2d 647 (11th Cir.1990), in order to describe the obstruction of justice charge, 18 U.S.C. § 1503. (R11-131 to 134; R3-16 to 20.)

The court rejected the defendant's request for instructions requiring the government to prove that the defendant endeavored to influence, obstruct or impede the Grand Jury proceeding itself, rather than simply stating that defendant endeavored to influence, obstruct or impede the due administration of justice. (R11-134 to 135; R3-13, 14, 19.) Defendant objected to the proposed jury instruction without the requested language, but the district court overruled the objection based on the court's reading of the *Thomas* decision. (R3-19.)

On August 29, 1994, Brenson was convicted of conspiring to obstruct justice and of obstructing justice, as charged in the indictment. (R1-56-1.) Brenson filed motions for judgment of acquittal and for a new trial on September 6, 1994. (R1-64-1; R1-

65-1.) In the motion for a new trial, Brenson argued that the court erred in modifying the jury instruction to allow the finding of obstruction to be to "due administration of justice" rather than to the grand jury proceeding. (R-64-1 to 3.) Brenson repeated his argument concerning the jury instructions in the motion for acquittal, but also argued that there was insufficient evidence: (1) of a nexus between Brenson's actions and how those actions could have an impact upon the grand jury's investigation; (2) of the necessary corrupt intent; and (3) of a separate agreement as the basis for the conspiracy conviction. (R1-65.) In the motion for acquittal, Brenson also argued that the conspiracy conviction violated the Wharton rule. (R1-65-7.) Both motions were summarily denied by the court on September 12, 1994. (R1-66.)

## II. ISSUES ON APPEAL

On November 28, 1994, Brenson appealed the final judgment of conviction and the sentence imposed. (R1-77.) On appeal, Brenson takes issue with the sufficiency of evidence both as to his conviction for endeavoring to obstruct the due administration of justice and as to his conviction for conspiring to obstruct the due administration of justice. Additionally, Brenson argues the following: (1) the district court provided an erroneous jury instruction as to the required proof under 18 U.S.C. § 1503, which led to a conviction without a finding of an obstruction of a judicial proceeding; (2) the requirement of a "corrupt" intent in 18 U.S.C. § 1503 renders the statute unconstitutionally vague as applied to this case; and (3) the conspiracy charge merges into the substantive offense under 18 U.S.C. § 1503 based on the Wharton

Rule.  As to sentencing, Brenson argues on appeal that the sentence imposed by the district court is not supported by the facts or law. The specific issues raised by Brenson as to his sentence are discussed below.

A. THE OBSTRUCTION OF JUSTICE CONVICTION

Brenson was convicted under the omnibus clause of 18 U.S.C. § 1503:

> (a) Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided ...

18 U.S.C. § 1503(a) (1995).  "The omnibus clause is essentially a catch-all provision which generally prohibits conduct that interferes with the due administration of justice." *United States v. Thomas,* 916 F.2d 647, 651, n. 3 (11th Cir.1990).

In order to convict Brenson under the omnibus clause of 18 U.S.C. § 1503, the government had to prove that:  (1) Brenson corruptly;  (2) endeavored;  (3) to influence, obstruct, or impede the due administration of justice.  *Thomas,* 916 F.2d at 651.  The government contends that the evidence presented at trial provided sufficient proof as to all the necessary elements of § 1503. Brenson argues on appeal, as he did during the trial, that because he in no way impeded, obstructed or influenced the grand jury investigation of Fernandez or the indictment of Fernandez, his conviction for obstruction of justice is not supported by the evidence and the jury instructions given by the district court concerning the elements of § 1503 were in error.

The sufficiency of the evidence is a question of law which

receives a de novo review by this court. *United States v. Hooshmand,* 931 F.2d 725, 733 (11th Cir.1991). "In considering appellants' claims of insufficient evidence, this court must view all of the evidence, together with all logical inferences flowing from that evidence, in the light most favorable to the government, and must draw all credibility choices in favor of the finder of fact." *United States v. Perez,* 698 F.2d 1168, 1169 (11th Cir.1983). "When a jury finds a defendant guilty, its verdict must stand if "*any* rational trier of fact could have found the **essential** elements of the crime beyond a reasonable doubt.' " *United States v. Saget,* 991 F.2d 702, 711 (11th Cir.) *cert. denied,* 510 U.S. 950, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). However, "if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilty," then the conviction must be reversed. *United States v. Thomas,* 916 F.2d 647, 653 (11th Cir.1990).

1. THE ACT OF DISCLOSING SECRET GRAND JURY INFORMATION.

According to Brenson, the facts of this case require this court to "place the metes and bounds on the very broad language of the catchall provision" in § 1503 out of deference to the prerogatives of Congress, as recognized in *Dowling v. United States,* 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985), and out of concern that fair warning be given so the common world can understand based on the language used what the law intends to do if a certain line is passed. *United States v. Aguilar,* --- U.S. ----, ----, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995). Brenson argues

that the omnibus clause of § 1503 was not intended to apply to his actions in disclosing secret grand jury information.

The Government responds by demonstrating that the omnibus clause of § 1503 has been given a broad reading by this court. "Section 1503 forbids interferences with the due administration of justice, i.e., judicial procedure." *United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir.1984). "The statute aims "to prevent a miscarriage of justice.' " *Silverman*, 745 F.2d at 1393.

In *United States v. Brand,* 775 F.2d 1460, 1465 (11th Cir.1985), this court recognized that "[w]e have stated more than once that the omnibus clause in broad enough to cover any act committed corruptly, in an endeavor to impede or obstruct justice." This court previously determined that "[t]he statute [§ 1503] reaches all corrupt conduct capable of producing an effect that prevents justice from being duly administered, regardless of the means employed." *United States v. Silverman,* 745 F.2d 1386, 1393 (11th Cir.1984). Upon review of the evidence presented at trial, it is clear that Brenson's disclosure of grand jury information to the target of the grand jury investigation[2], prior to any

---

[2]Courts have uniformly recognized many compelling reasons for enforcing the secrecy of grand jury proceedings:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted; (4) to encourage free and untrammeled disclosure by persons who have information with resect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under

indictment being returned, is the type of conduct capable of being punished under § 1503.

In *United States v. Howard,* 569 F.2d 1331 (5th Cir.1978)[3], the defendants were convicted of conspiring to obstruct justice in violation of § 1503 by attempting to sell transcripts of secret grand jury testimony to persons under investigation by the grand jury. On appeal, the court determined that the appropriation and disclosure of secret grand jury materials constitutes an obstruction of justice by breaching the secrecy of the grand jury proceedings. *Howard,* 569 F.2d at 1336.

This court has previously determined that "[a]ny person "who knowingly violates Rule 6(e)(2) [Fed.R.Crim.P.] [4] or induces or attempts to induce another person to violate the Rule may be [convicted] for obstruction of justice under § 1503.' " *United States v. Saget,* 991 F.2d 702, 713 (11th Cir.) *cert. denied,* 510

---

investigation, and from the expense of standing trial where there was no possibility of guilt.

*United States v. Howard,* 569 F.2d 1331, 1335 (5th Cir.1978) (quoting *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958)) (other citations omitted).

[3]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc* ), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[4]Rule 6(e)(2) of the Federal Rules of Criminal Procedure addresses the general rule of secrecy applicable to a grand jury and states as follows:

A grand juror ... shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punishable as a contempt of court.

U.S. 950, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993) (quoting *Blalock v. United States,* 844 F.2d 1546, 1561, n. 22 (11th Cir.1988) (JJ. Tjoflat and Roetger, concurring specially)) (alteration in original). Contrary to Brenson's argument, a person who improperly reveals grand jury information in violation of Rule 6(e)(2) can be convicted for obstruction of justice or contempt[5], provided the elements of § 1503 are proven.

According to Brenson, recently decided cases support his argument that the act of disclosing grand jury information is insufficient to support a conviction of obstruction of justice. In making this point, Brenson relies on the Supreme Court's decision in *United States v. Aguilar* for the proposition that the providing of false information to agents that the **defendant knows will testify before a grand jury** was insufficient to demonstrate that Aguilar's action would have the natural and probable effect of impeding the grand jury proceeding. However, upon review of the *Aguilar* decision, the Supreme Court expressly stated that "[t]he Government did not show here that the agents acted as an arm of the grand jury, or indeed that the grand jury had ever summoned the testimony of these particular agents [those agents who interviewed

---

[5]The legislative history of § 1503 indicates that Congress intended for § 1503 to cover acts of contempt that were out-of-court which should be handled by indictment and trial rather than summary contempt proceedings. *United States v. Griffin,* 589 F.2d 200, 204-05 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979); *United States v. Howard,* 569 F.2d 1331, 1336 (5th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978). Although the contempt statute and § 1503 often overlap, section 1503 encompasses a meaning and purpose distinct from that of the general contempt provision. *Howard,* 569 F.2d at 1336.

Aguilar]" and evidence at trial relied on by the Government "would not enable a rational trier of fact to conclude that [Aguilar] knew that his false statement would be provided to a grand jury ..." --- U.S. at ----, ---- - ----, 115 S.Ct. 2357, 2362-63. Thus, a close reading of the *Aguilar* decision refutes Brenson's characterization of the holding.

Similarly, Brenson relies on this court's decision in *United States v. Thomas,* for the proposition that an attorney providing false testimony is not enough to prove an obstruction of a grand jury. In the *Thomas* decision the court pointed out that the court was "not even convinced that the government established that Thomas's testimony was false." 916 F.2d at 653. However, the court did determine that even if they did believe that a jury could reasonably find that Thomas's testimony was false beyond a reasonable doubt, the government's case as to obstruction of justice under § 1503 fails "because no evidence was introduced that the statements had a natural and probable effect of impeding justice." *Thomas,* 916 F.2d at 654.

Based on our reading of *Thomas,* the decision does not include any determination that the act of giving false testimony could not serve as a basis for an obstruction of justice conviction, but rather reversed the conviction based on the absence of the necessary evidence that such false testimony would have the natural and probable effect of impeding justice. While the *Thomas* decision can be fairly read to require that Brenson's actions of disclosing grand jury information must be accompanied by proof of the "natural and probable effect" of such disclosures on the due administration

of justice in order to support a conviction, we conclude that the *Thomas* decision does not support Brenson's argument that his illegal disclosures are actionable only as contempt of court and not as a basis for an obstruction of justice conviction.

2. THE NATURAL AND PROBABLE EFFECT OF DISCLOSING THE GRAND JURY INFORMATION.

Brenson argues that the evidence presented in his case failed to meet the "nexus" requirement of § 1503 previously defined by this court in *United States v. Thomas,* 916 F.2d 647, 651 (11th Cir.1990), and adopted by the United States Supreme Court in the *Aguilar* decision:

> The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the Court's or grand jury's authority. *United States v. Brown,* 688 F.2d 596, 598 (9th Cir.1982) (citing cases). Some courts have phrased this showing as a "nexus" requirement—that the act must have a relationship in time, causation or logic with the judicial proceedings. *United States v. Wood,* 6 F.3d 692, 696 (10th Cir.1993); *United States v. Walasek,* 527 F.2d 676, 679, and n. 12 (3d Cir.1975). In other words, the endeavor must have the " "natural and probable effect' " of interfering with the due administration of justice. *Wood, supra,* at 695; *United States v. Thomas,* 916 F.2d 647, 651 (11th Cir.1990); *Walasek, supra,* at 679 ... [I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.

*United States v. Aguilar,* --- U.S. ----, ----, 115 S.Ct. 2357, 2362, 132 L.Ed.2d 520 (1995). According to Brenson, there was insufficient evidence at trial to establish that he could have or wanted to affect the grand jury deliberations during the week before the indictment was signed by giving information to DeMaria.

The government is not required to prove that the action taken would directly and immediately obstruct justice in order to violate § 1503, but rather that Brenson's conduct has a probable effect of

obstructing justice. *Thomas*, 916 F.2d 647, 651-52. "The government is not required to prove ... that the defendant harbored the specific purpose of obstructing the due administration of justice; all the government has to establish is that the defendant should have reasonably foreseen that the natural and probable consequence of the success of his scheme would achieve precisely that result." *Silverman*, 745 F.2d at 1393. In other words, "the government is not required to prove that a defendant had the specific purpose of obstructing justice, but it must establish that the conduct was motivated at least in part, by a "corrupt motive.' " *United States v. Saget*, 991 F.2d 702, 713 (11th Cir.) *cert. denied*, 510 U.S. 950, 114 S.Ct. 396, 126 L.Ed.2d 344 (1993).

In *United States v. Saget*, this court determined that when the defendants met with a grand juror, questioned the grand juror about the investigation and asked the grand juror to keep them informed of developments, "the disclosure of secret information by a grand jury, which otherwise would not have been revealed, was a reasonably foreseeable result" of such a meeting, thereby concluding that defendants' actions had the natural and probable effect of impeding the due administration of justice. 991 F.2d at 713. It directly follows that when Brenson meet with DeMaria and Fernandez, provided details about the investigation and answered questions along with agreeing to keep them informed of later events, it was reasonably foreseeable that such actions would have the probable effect of obstructing the due administration of justice.

3. THE JURY INSTRUCTION ON 18 U.S.C. § 1503 DESCRIBING THE "NEXUS ELEMENT."

Brenson argues that the "nexus" requirement of § 1503 mandates that the government prove that his actions had the natural and probable tendency of influencing that the grand jury proceeding *involving Fernandez.* Relying on the language in *Aguilar* requiring that the government prove that a defendant's actions were intended to influence a judicial proceeding, rather than some ancillary proceeding, Brenson argues that his actions must be proven beyond a reasonable doubt to have been an endeavor to influence, obstruct or impede the Grand Jury proceeding *involving Fernandez* and not merely an endeavor to influence, obstruct or impede the due administration of justice generally.

Based on this legal argument, Brenson requested the following jury instruction during the charge conference:

> Title 18, United States Code Section 1503, makes it a federal crime to corruptly influence, obstruct, or impede the due administration of justice in any Federal Court.

> Count 2 charges the Defendant, RONALD A. BRENSON, with corruptly endeavoring to influence, obstruct, or impede the due administration of justice in the United States District Court for the Southern District of Florida in November, 1993, during the federal grand jury investigation of *United States v. Armando "Mandy" Fernandez, et al.*

> To "endeavor to influence, obstruct or impede" a grand jury investigation means to commit an act that has the natural and probable tendency of influencing, obstructing or impeding the grand jury's investigation.

> Therefore, the Defendant can be found guilty of that offense if all of the following facts are proven beyond a reasonable doubt:

> First: That there was a pending grand jury proceeding as alleged;

> Second: That the defendant committed an act that had the natural and probable tendency of influencing, obstructing or impeding that grand jury's investigation; and

> Third: That the defendant's acts were done knowingly and

> corruptly.

> To act "corruptly" means to act knowingly and dishonestly with the specific intent to subvert or undermine the integrity of the grand jury proceeding.

(R1-48). At the charge conference, the government objected to the phrasing of the "nexus" requirement in terms of the grand jury rather than as to "the due administration of justice" based on the terms of the statute, the charges in the indictment and the *Thomas* decision. (R11-126 to 127). After reviewing the *Thomas* decision, the district court agreed with the government and ruled that the government's proposed jury instruction on the substantive offense of § 1503 would be given along with direct quotations from the *Thomas* decision. The district court denied Brenson's requested instruction on § 1503 as covered by the instructions to be given.

When charging the jury in this case, the district court gave the following instructions on § 1503, that were largely taken from the *Thomas* decision:

> Title 18, United States Code, Section 1503, a section of that book, Title 18, makes it a Federal crime or offense for anyone to corruptly endeavor to influence, obstruct or impede the due administration of justice in any Federal Court. The defendant can be found guilty of that offense if all of the following facts are proved, beyond a reasonable doubt:

> First, that there was a pending Grand Jury proceeding in this Court as alleged; second that the defendant endeavored to influence, obstruct or impede the due administration of justice; and third, that the defendant's acts were done knowingly and corruptly. These are the three things that the government must prove and I will explain them in just a few seconds.

> In order to convict an individual under this statute, the statute that I just spoke about, Section 1503 of that Title 18, the government must prove that he, must prove that he, the defendant: Number one, corruptly or by threat; number two, endeavored; and number three, to influence, obstruct or impede the due administration of justice.

Corruptly describes the specific intent of the crime. Generally, the government must show that the defendant, Mr. Brenson, knowingly and intentionally understood an action from which an obstruction of justice was a reasonably foreseeable result.

Although the government is not required to prove that the defendant, Mr. Brenson, had the specific purpose of obstruction of justice, it must, the government, must establish that the conduct was prompted at least in part by the corrupt motive.

The endeavor element of the offense describes any attempt or effort to obstruct justice.

It is not necessary that an individual succeed in actually obstructing justice to violate Section 1503. A Section 1503 offense is complete when one corruptly endeavors to obstruct or impede the due administration of justice. The prosecution need not prove that the due administration of justice was actually obstructed or impeded.

An individual is prohibited from engaging in any activity constituting an effort to influence, obstruct or impede the due administration of justice. The action taken by the defendant does not need to directly and immediately obstruct justice to be prohibited by Section 1503. The defendant's conduct must be such, however, that its natural and probable effect would be the interference with the due administration of justice. That is the definition of Section 1503, Count II.

(R12-60 to 63). "A trial court's refusal to give a requested instruction is reversible error only if (1) the substance of the instruction was not covered in an instruction given, (2) the requested instruction is a correct statement of law, (3) the requested instruction deals with an issue properly before the jury, and (4) the party seeking the requested instruction suffered prejudicial harm by the court's refusal." *United States v. Hooshmand,* 931 F.2d 725, 734 (11th Cir.1991). "Since these four elements are in the conjunctive, if the requesting party cannot show any one of the elements, then the district court did not commit reversible error." *United States v. Jennings,* 991 F.2d 725, 731 (11th Cir.1993).

In reviewing the district court's decision to refuse the instruction requested by Brenson, the court recognizes that "[a] district judge is vested with broad discretion in formulating his charge to the jury so long as it accurately reflects the law and the facts." *United States v. Silverman,* 745 F.2d 1386, 1395 (11th Cir.1984). The jury instructions given by the district court required a finding that there was a grand jury proceedings pending at the time of Brenson's actions. Therefore, the district court incorporated Brenson's request that the jurors be asked to focus on the grand jury proceedings, although not in the exact terms that Brenson desired.

Alternatively, the instruction requested by Brenson was not a correct statement of the law. "[T]he court is bound to refuse a requested instruction that is incomplete, erroneous, or misleading." *Silverman* 745 F.2d at 1396. The phrase "due administration of justice" has been defined by the former Fifth Circuit as "judicial procedure," and as "the performance of acts required by law in the discharge of duties such as appearing as a witness and giving thoughtful testimony when subpoenaed." *United States v. Howard,* 569 F.2d 1331, 1334, n. 4, 1337 (5th Cir.1978) (quoting *United States v. Partin,* 552 F.2d 621, *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977)).

While it is clear that a grand jury proceeding is a recognized part of the judicial proceedings that can be impeded or obstructed, it is not the only part of the judicial proceeding that is protected by § 1503 from impediments, improper influence or obstruction. Section 1503 employs the term "due administration of

justice" to provide a protective cloak over all judicial proceedings, irrespective of at what stage in the judicial process the improper activity occurs. In this case, Brenson's illegal disclosure of grand jury information occurred prior to the return of an indictment, an arrest, seizure or forfeiture of any assets, and well before the trial of any individuals being investigated by the grand jury. Therefore, his act of disclosing secret grand jury information must be considered in relation to its natural and probable effect of impeding, influencing or obstructing any of the present or future stages of the judicial proceedings related to any offenses by Fernandez or others that were the subject of the investigation.

Based on the foregoing analysis, we conclude that the jury instructions given by the district court accurately reflect the necessary elements of proof for a conviction under § 1503. As long as the jury instructions inform jurors that the government is required to prove beyond a reasonable doubt that the defendant corruptly took some action, the natural and probable effect of which would be to obstruct or impede the enforcement of the law of the land in a judicial proceeding, the nexus requirement has been adequately explained. Therefore, we find no error in the district court's refusal to give the jury instructions requested by Brenson.

B. CONSTITUTIONAL CHALLENGE TO THE TERM "CORRUPT" IN 18 U.S.C. § 1503

Brenson asserts that the term "corrupt" in 18 U.S.C. § 1503 is unconstitutionally vague. Because there are no first amendment

considerations present[6], the court need only review the statute's clarity as applied to the facts of this case. *United States v. Howard,* 569 F.2d 1331, 1337, n. 9 (5th Cir.1978) (citing *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)). Brenson cannot challenge § 1503 as constitutionally vague on its face. *Id.*

In his constitutional challenge, Brenson relies on *United States v. Poindexter,* 951 F.2d 369 (D.C.Cir.1991), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 656, 121 L.Ed.2d 583 (1992), to analogize the defendant in *Poindexter* to himself, and argues that if the National Security Advisor to the President is not expected to know what the term "corruptly" means, then Brenson should not be expected to know its meaning. Brenson relies on his own confusion and inability to understand the term "corrupt" as it applied to his actions after discussing the term "corrupt" with the district court and reviewing a copy of the pattern jury instructions on § 1503 published by the Eleventh Circuit District Judges Association as proof of the term's vagueness.

The government correctly distinguishes the *Poindexter* opinion of the United States Court of Appeals for the District of Columbia Circuit, where the court determined that the term "corruptly" in 18 U.S.C. § 1505 was unconstitutional as applied to the making of a false or misleading statement to the Congress. 951 F.2d at 386. The holding of unconstitutionality was closely tied to the alleged

---

[6]A prohibition against corrupt acts does not proscribe constitutionally protected speech and is clearly limited to unprotected activity. *United States v. Thompson,* 76 F.3d 442, 452 (2d Cir.1996).

illegal conduct by Poindexter and the unique nature of § 1505. *Id.* at 385-87. The court stated in the *Poindexter* opinion that "the language of § 1505 is materially different from that of § 1503" and found cases construing § 1503 were not instructive in their analysis as to whether the term "corruptly" in § 1505 was unconstitutionally vague. *Id.* at 385.

If a criminal statute "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement," then the statute is not unconstitutionally vague. *United States v. Moody,* 977 F.2d 1420, 1424 (11th Cir.1992) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)). The mere fact that a term "covers a broad spectrum of conduct" does not render it unconstitutionally vague. *United States v. Griffin,* 589 F.2d 200, 206 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979).

"The obstruction of justice statute was drafted with an eye to "the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined.' " *Griffin,* 589 F.2d at 206-207 (citing *Anderson v. United States,* 215 F.2d 84 (6th Cir.1954), *cert. denied,* 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698 (1954)).

The former Fifth Circuit previously faced a challenge to § 1503 as unconstitutionally vague. In *United States v. Howard,* 569 F.2d 1331, 1336, n. 9 (5th Cir.1978), the court stated that "our

interpretation of the omnibus clause does not create a trap for the unwary." *Howard,* 569 F.2d at 1337, n. 9. The statutory language of § 1503 was declared "sufficiently clear and limited." *Id.* The court concluded that "[i]f anyone unwittingly runs afoul of § 1503, it will not be on account of misconstruction but because of an ignorance for which there is no excuse." *Id.*

In *United States v. Popkin,* 943 F.2d 1535, 1539-40 (11th Cir.1991), *cert. denied,* 503 U.S. 1004, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992), this court considered the meaning of the term "corruptly" as used in 26 U.S.C. § 7212(a)[7]. In reviewing § 7212(a), this court adopted the reasoning in *United States v. Reeves,* 752 F.2d 995 (5th Cir.), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985), and the conclusion that " "corruptly' is used for the purpose of "forbidding those acts done with the intent to secure an unlawful benefit either for oneself or for another.' " *Popkin,* 943 F.2d at 1540. This court went on to hold that the use of "corruptly" in § 7212(a) "gives clear notice of the breadth of activities that are proscribed." *Id.* Likewise, we do not find the term "corruptly" in 18 U.S.C. § 1503 as applied to Brenson's disclosure of secret grand jury information to be

---

[7]26 U.S.C. § 7212(a) states, in relevant portions, as follows:

> Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force ... obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both ...

unconstitutionally vague.

"[T]he requirement that statutes give fair notice cannot be used as a shield by one is already bent on serious wrongdoing." *United States v. Griffin,* 589 F.2d 200, 207 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979). Based on his own statements and the information provided to Brenson as a grand juror, it is clear that Brenson knew that disclosure of this information was unlawful. There is little need of advance notice to an individual that the action taken, which he knows to be unlawful, is a violation of the law. *Griffin,* 589 F.2d at 207.

C. THE CONSPIRACY CONVICTION

Brenson asserts three grounds to support his argument that the conspiracy conviction was in error: (1) there was insufficient proof that Brenson's actions in disclosing the information were illegal and thus he cannot be guilty of a conspiracy to commit acts which are not criminal; (2) the government failed to present sufficient evidence that Brenson had an agreement with DeMaria to reveal grand jury information in order to obstruct justice; and (3) the substantive offense of endeavoring to obstruct justice under § 1503 merges into the alleged "conspiracy" under the Wharton Rule so that convictions under both § 1503 and § 371 would violate the Wharton Rule.

"In order to sustain a conviction under 18 U.S.C. § 371, the government must show (1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United States v.*

*Harmas,* 974 F.2d 1262, 1267 (11th Cir.1992) (quoting *United States v. Cure,* 804 F.2d 625, 628-30 (11th Cir.1986)). Brenson's first ground for challenging the sufficiency of his conspiracy conviction can be summarily disposed of based on the court's earlier determination that there was sufficient evidence at trial to convict Brenson of endeavoring to obstruct the due administration of justice by the illegal disclosure of secret grand jury information. There is no question that Brenson went out in search of DeMaria and then provided desirable information to DeMaria and Fernandez for the unlawful objective of notifying individuals who were subject to or potentially affected by the ongoing grand jury investigation.

1. Evidence of An Agreement

Next Brenson asserts that the evidence presented at trial was insufficient in its proof of an agreement between Brenson and DeMaria to reveal grand jury information. According to Brenson, an agreement for Brenson to talk while his co-conspirators listened is not a sufficient agreement to support a conspiracy conviction. "The existence of a conspiratorial agreement may be established through either direct or circumstantial evidence, such as inferences from the conduct of the alleged participants." *United States v. Farris,* 77 F.3d 391, 394 (11th Cir.1996). In fact "there is rarely any direct evidence of any agreement to join a conspiracy, and thus, the defendant's assent can be inferred from acts that furthered the conspiracy's purpose." *United States v. Miller,* 693 F.2d 1051, 1053 (11th Cir.1982).

The evidence presented at trial establishes that Brenson

purposefully arranged a meeting with DeMaria, who he knew to be an associate of Fernandez.  Once DeMaria introduced himself, Brenson began disclosing grand jury information, including names of witnesses who testified, assets to be seized, and other details. Then when DeMaria brought in Fernandez, he introduced him as "Mandy, the owner of The Collection" and asked Brenson to repeat this secret grand jury information.  Brenson began disclosing details concerning the grand jury proceeding to Fernandez.  As Brenson was leaving, DeMaria stated that he wanted to "stay in touch" with Brenson and asked how he could get a hold of him. Brenson responded by providing DeMaria with his beeper number.

From the foregoing evidence, a rational juror could have inferred from Brenson's actions that he did in fact enter into an agreement with DeMaria and/or Fernandez to provide secret grand jury information.  Additionally, the evidence at trial provides a sufficient basis for a rational juror to infer that Brenson had the unlawful objective of illegally disclosing grand jury information when he initiated the meeting with DeMaria.  Based on the evidence presented at trial, it is rational for a jury to determine that once DeMaria introduced Fernandez to Brenson and Brenson assented to provide such information directly to Fernandez, an agreement had been reached for an unlawful objective.  Furthermore, it is rational for a juror to infer such an agreement from the fact that when DeMaria expressed a interest in "staying in touch" with Brenson and "getting a hold" of Brenson, Brenson provided his beeper number for future contact.

Brenson appears to be asserting that there can be no

conspiracy because Brenson did not even know Fernandez, prior to the meeting. Even assuming that the evidence established that Brenson only intended to and only agreed to provide the grand jury information to DeMaria, such an agreement would still have the illegal objective of disclosing grand jury information and provide evidence of a "corrupt motive" based on Brenson's intention to provide an unlawful benefit to himself or another. Because the evidence demonstrates that Brenson knew DeMaria was an associate of Fernandez and had an interest in an asset that was to be seized, there is sufficient evidence for a rational juror to conclude that the action of providing the information to DeMaria would likely affect the judicial proceeding. Although not discussed by the parties, this same evidence also provides sufficient proof of Brenson's voluntary participation in the conspiracy and an overt act in furtherance of the conspiracy. Therefore, we conclude that the evidence presented at trial was sufficient to support Brenson's conviction under § 371 for conspiring to obstruct justice.

2. The Wharton Rule

The Wharton Rule states as follows: "[a]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." *Iannelli v. United States,* 420 U.S. 770, 773, n. 5, 95 S.Ct. 1284, 1288, n. 5, 43 L.Ed.2d 616 (1975). The classic example of the crime of adultery was used by Brenson to demonstrate the applicability of the Wharton Rule. *Iannelli,* 420 U.S. 770, 784, n. 15, 95 S.Ct. 1284, 1293, n. 15, 43 L.Ed.2d 616 (1975). Brenson

argues that the conspiracy conviction in this case violates the Wharton Rule based on the test set forth in *Iannelli.* The Supreme Court suggested that a court look at the elements of both the substantive offense and the conspiracy charge and if one requires proof of a fact that the other does not, then there is no violation of the Wharton Rule. 420 U.S. at 786, n. 17, 95 S.Ct. at 1294, n. 17.

As the government has pointed out, a person may violate Section 1503 without acting in concert with another or absent any assistance for another person, as when an individual, acting alone destroys evidence relevant to a judicial proceeding. *United States v. Howard,* 569 F.2d at 1334. Alternatively, even when dealing with the disclosure of grand jury information, an individual could violate § 1503 singularly by simply providing such information to another individual when such disclosure would have the probable effect of impeding the due administration of justice, without any agreement with the second person. In other words, there is no requirement that the government prove an "agreement" in order to properly convict an individual under § 1503. Thus, the prosecution and conviction of Brenson under § 1503 and for a conspiracy to violate § 1503 under § 371 does not violate the Wharton Rule.

D. CHALLENGES TO THE SENTENCE IMPOSED

1. Background

The Presentencing Investigation Report ("PSI") prepared on Brenson assigned an initial offense level for the two offenses of 12 based on grouping under § 3D1.2(b) and § 2J1.2 of the United States Sentencing Guidelines (the "Guidelines"). Then, the PSI

suggested that Brenson's base offense level should be increased to 30 by consideration of the offense level of 42 in the Fernandez case, based on the cross-referencing under § 2J1.2(c)(1) to § 2X3.1. The PSI recommended a two level increase in the offense level for "abuse of trust" under § 3B1.3 and another two level increase for "obstruction of justice" under § 3C1.1. The PSI provided no suggestion of a downward adjustment based on acceptance of responsibility.

The government submitted a memorandum to the district court requesting the offense level of 30 based on Brenson being sentenced pursuant to § 2X3.1 and its relation to the crimes charged in the Fernandez indictment. (R1-67-4 to 5.) A two level increase in the offense level based on "abuse of trust" under § 3B1.3 was also requested by the government, as well as an additional two level increase for "obstruction of justice" under § 3C1.1 related to efforts by Brenson to "get word" to DeMaria that Brenson had been arrested and that he was cooperating. (R1-67-5 to 6.) Additionally, the government asked for a three level upward departure for "disruption of governmental functions" under § 5K2.7 based on the government's assertion that the grand jury of which Brenson had been a member had to be disbanded and a new jury heard some of the investigations heard by Brenson's grand jury. (R1-67-6 to 7.) Finally, the government asked for another five level upward departure under § 5K2.14 under public welfare, for a total offense level of 42 after all requested increases. (R1-67-7 to 9.)

Brenson submitted a memorandum to the trial court in which he argued that the appropriate maximum base offense level was 12 and

that both § 2J1.2 and § 2X3.1 were inapplicable to this case. (R1-68-2, 4.) Brenson also objected to the use of the "abuse of trust," "obstruction of justice" and "disruption of government functions" adjustments because he argued that these elements were inherent in the offense. (R1-68-3 to 5.) Brenson requested a reduction for acceptance of responsibility based on his attempt to plead guilty. (R1-68-6.)

At the initial sentencing hearing on October 31, 1994, the district court: (1) applied the cross reference in § 2J1.2 and under § 2X3.1 assigned an offense level of 30; (2) provided a two level increase in the offense level for abuse of trust pursuant to § 3B1.3; (3) declined to provide an increase in the offense level for obstruction of justice under § 3C1.1, as requested by the government; (4) declined a reduction for acceptance of responsibility pursuant to § 3E1.1, as requested by Brenson; and (5) declined to give a three level upward enhancement or departure under § 5K2.7 based on endangerment to public welfare. (R13-52 to 55.) During the hearing, Brenson's counsel requested that the district court provide a downward departure for his role in the offense. (R13-49, 56 to 58.) The trial court provided Brenson additional time to brief the issue of a downward departure for Brenson's minor role in the offense. (R13-58 to 61.)

The final sentencing hearing was held on November 28, 1994. (R14-1.) At that time, the court declined to depart downward based on Brenson's role in the offense, despite the fact that judge expressed great personal concern because he believed the sentence required by the Guidelines in this case to be unfair. (R14-9 to

11.)  The district court sentenced Brenson to 120 months imprisonment, followed by two years of supervised release, with no fine imposed.  (R14-11.)

2. Issues Raised on Appeal

Brenson challenges the district court's determinations as to the following:  (1) the application of the cross-reference to § 2X3.1 based on those offenses committed by Fernandez;  (2) the denial of a downward departure for his role in the offenses by Fernandez;  (3) the imposition of an upward adjustment for abuse of trust under § 3B1.3 of the Sentencing Guidelines;  and (4) the district court's denial of a downward adjustment for acceptance of responsibility.

a. Determination of the Base Offense Level

Brenson challenges the district court's assignment of an offense level of 30, based on the cross-reference in § 2J1.2(c)(1) to § 2X3.1 of the Guidelines.[8]  According to Brenson, cross-referencing his sentence to those offenses to which Fernandez

_____

[8]Section 2J1.2 provides the "obstruction of justice" offense with a base offense level of 12 and then states the following:

> If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.

U.S.S.G. § 2J1.2(c)(1).  Then based on section 2X3.1 the base offense level is "**6** levels lower than the offense level for the underlying offense, but in no event less than **4**, or more than 30 ..."  Based on the quantity of drugs involved in the offenses to which Fernandez pled guilty, the base offense for the underlying offense was either 42 or 38, depending on which version of the Guidelines applied.  Under either version of the Guidelines, the maximum base offense level for Brenson under § 2X3.1 is 30.

pled guilty is in error because: (1) § 2J1.2(c)(1) requires an actual obstruction of justice and Brenson's conviction for unsuccessfully "endeavoring" to obstruct justice renders this provision inapplicable; and (2) Brenson was not an "accessory after the fact."

Initially, Brenson argues that § 2J1.2(c)(1) cannot be utilized in determining his sentence because the provision deals only with an actual obstruction and not simply "endeavoring" to obstruct justice. In this case Brenson has been convicted of conspiring to obstruct justice in violation of 18 U.S.C. § 371 and endeavoring to obstruct the due administration of justice in violation of 18 U.S.C. § 1503. We believe that each of these offenses is encompassed in § 2J1.2(c)(1) as an offense that "involved obstructing the investigation or prosecution of a criminal offense." We are not alone in our analysis that § 2J1.2(c)(1) applies to a conviction for endeavoring to obstruct the due administration of justice under § 1503. *See United States v. Aragon,* 983 F.2d 1306, 1315 (4th Cir.1993).[9] We agree with the Fourth Circuit Court of Appeals' analysis and determination in *Aragon.*

Brenson then argues that the district court erred in applying

---

[9]The Fourth Circuit explained that because § 2J1.2 "is the only section of the guidelines which covers 18 U.S.C.A. § 1503 ... it follows logically that endeavoring to obstruct justice, a subpart of 18 U.S.C.A. § 1503, is to be included within § 2J1.2." *United States v. Aragon,* 983 F.2d 1306, 1315 (4th Cir.1993). Additionally, the court relied on the use of the term "effort" in the background commentary to § 2J1.2 as indicating that this provision was "meant to guide sentencing for all violations of 18 U.S.C.A. § 1503, whether on an obstruction or "endeavoring' theory." *Aragon,* 983 F.2d at 1315.

§ 2X3.1 as a cross-reference for determining his base offense level. The argument concerning the inapplicability of § 2X3.1 appears to be based on a lack of understanding as to how § 2X3.1 is applied in these types of cases. This court recently stated that "[t]he language of the cross-referencing provision [§ 2J1.2] is mandatory when the offense involves "obstructing the investigation or prosecution of a criminal offense' without any qualification and without regard to whether defendant or anybody else was convicted of the underlying offense, or whether an offense could be shown to have been committed at all." *United States v. McQueen,* 86 F.3d 180, 182 (11th Cir.1996). Pursuant to § 2J1.2, "a sentencing court must apply the cross-reference provision," when applicable. *McQueen,* 86 F.3d at 182 (emphasis added).

In *United States v. McQueen,* the district court erroneously declined to apply the cross-referencing provision when sentencing the defendant as to his obstruction of justice offense because the defendant had been acquitted of the underlying offense (money laundering). 86 F.3d at 182-84. This court pointed out that the "district court erroneously focused on the definition of "underlying offense' in § 2X3.1, which applies to a conviction as an accessory after the fact" and "[t]hat definition does not apply for cross-reference purposes." *Id.* at 183. Based on this same rationale, Brenson need not be proven to be an accessory after the fact, because the application of § 2X3.1 is due to the cross-referencing requirement in § 2J1.2(c)(1) and not based on Brenson being treated as an accessory after the fact.

The application notes to § 2J1.2 of the Guidelines[10], in the relevant part, state as follows:

> The specific offense characteristics reflect the more serious forms of obstruction. Because the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided. Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person.

These notes indicate that the use of § 2X3.1 is intended not to treat the defendant as having committed the underlying offense, but to weigh the severity of one's actions in obstructing justice based on the severity of the underlying offense that was the subject of the judicial proceeding sought to be obstructed, impeded or influenced. This court has recognized that the purpose of the cross-referencing to § 2X3.1 is to provide proportionality in the sentencing of such offenses. *United States v. Pompey,* 17 F.3d 351, 352 (11th Cir.1994).

Application of section 2X3.1 and viewing the underlying offense "is not commensurate with conviction of the underlying offense or a sentence for the underlying offense" but merely a measure or point of reference for the severity of offenses involving the administration of justice. *United States v. Roderick,* 974 F.2d 1270, 1272-73 (11th Cir.1992) (dealing with § 2X3.1 in a sentence for a perjury offense). Thus, Brenson's

---

[10]Commentary that provide either interpretation or explanation of a guideline is binding, unless it violates the Constitution or a federal statute or is plainly erroneous or inconsistent with the regulation it interprets. *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

argument that the government has the burden of proving that he qualifies as an accessory after the fact to the crimes committed by Fernandez is incorrect.

Brenson relies on this court's opinion in *United States v. Huppert,* 917 F.2d 507 (11th Cir.1990) as supporting his arguments, but the holding in *Huppert* is inapplicable to this case. The decision in *Huppert* dealt with the court's refusal to apply § 2X3.1 where the defendant obstructed an investigation only to assist himself, rather than others. *United States v. McQueen,* 86 F.3d 180, 182 (11th Cir.1996). In this case the facts demonstrate that the disclosures by Brenson were intended to assist others in obstructing or impeding the judicial proceedings related to offenses committed by persons other than himself. Furthermore, the language at issue in the *Huppert* was part of the commentary which has been amended to now include attempts to avoid punishment for an offense either committed by the defendant or to assist another person in escaping punishment for an offense. *See* U.S.S.G. § 2J1.2(c)(1), commentary (backg'd) (Nov. 1, 1991).

Even assuming that the government was required to prove that Brenson was an accessory after the fact to the offenses committed by Fernandez, sufficient evidence was presented. The determination of whether an individual is an accessory after the fact "is a legal conclusion subject to de novo review." *United States v. Huppert,* 917 F.2d 507, 510 (11th Cir.1990). "The gist of being an accessory after the fact lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he has committed the crime." *Huppert,* 917 F.2d at 510 (quoting *United*

*States v. Willis,* 559 F.2d 443, 444 (5th Cir.1977)).  The evidence presented at trial established that prior to any indictment being returned, Brenson provided the target of the grand jury investigation, Fernandez, and DeMaria with information regarding witnesses who appeared before the grand jury, names of those who could possibly be indicted and the possible charges, the proposed forfeiture of certain assets and the anticipated date of the indictment.  This information once disclosed provided assistance to Fernandez and DeMaria in a way capable of hindering or preventing the arrest of Fernandez and/or the forfeiture of certain property. Relying on the evidence presented, the sentencing court, if so required, could properly determine that Brenson was an accessory after the fact.

Based on the foregoing, we conclude that the district court properly applied the cross-reference to § 2X3.1 in this case to assign a base offense level of 30.

### b. Denial of the Downward Departure

Brenson requested a downward departure under § 5K2.0 based on his minimal role in the offenses committed by Fernandez and argues that the district court erred in refusing to provide him with the downward departure.  Brenson's assertion is based on his belief that he was not eligible for a downward adjustment under § 3B1.2 because he was the sole participant in the offense committed. Based on the assumption that Brenson was treated as an accessory to the offense committed by Fernandez under § 2X3.1, Brenson argues that he qualifies as a "participant" under § 3B1.2 for those offenses and his minimal role in the vast criminal enterprise of

Fernandez should be considered.

The threshold determination to be made by this court is whether we have jurisdiction to decide this issue.

> The Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, prohibits a defendant from appealing a sentencing judge's refusal to make a downward departure from the guidelines sentencing range. Nonetheless, review is available for a sentencing challenge based upon the district court's belief that it had no authority to depart from the sentencing guideline range.

*United States v. Patterson,* 15 F.3d 169, 171 (11th Cir.1994). This court has no jurisdiction to review the denial of Brenson's request for a downward departure unless "the sentencing court denied the downward departure based upon a misapprehension of its own discretionary authority to depart downward." *Patterson,* 15 F.3d at 171.

Obviously the district court understood its discretion under § 5K2.0 to provide a downward departure under limited circumstances when it invited the defendant to file a motion for a downward departure. After continuing the sentencing hearing and reviewing the submissions by both parties as to a possible downward departure, the court responded by stating "I have no choice but to follow the law, and I think my reading of the law requires me to deny the defendant's motion for a downward departure." (R14-9.) Neither this statement, nor anything else in the transcript of the sentencing proceedings, indicates that the district court misunderstood its authority to depart downward. To the contrary, the transcript of the sentencing proceedings illustrates that after reviewing the arguments of the parties and despite the district court's personal desire to minimize the sentence imposed, the

district court was unable to satisfy himself that the facts before him justified a departure downward from the guideline range. Accordingly, this court lacks jurisdiction to review the denial of the downward departure.

### c. Upward Adjustment for Abuse of Trust Under § 3B1.3

Brenson argues that the district court erred in adjusting his sentence upward under § 3B1.3 for "abuse of trust." According to Brenson, any abuse of trust is clearly inherent in the crime itself. Brenson also points to the application notes of § 3B1.3 requiring a position of public or private trust be "characterized by professional or managerial discretion (i.e. substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3, commentary, n. 1. Brenson believes that this provision does not apply to him because it was intended to apply to supervisory positions where an individual abuses the power to use discretionary judgment.

In reviewing the district court's decision to apply the enhancement in § 3B1.3 for an abuse of trust in this case, the court must proceed with a two-step analysis. First, the question of whether conduct by a grand juror justifies the "abuse of trust" enhancement is a legal conclusion requiring a de novo review. *United States v. Terry,* 60 F.3d 1541, 1545 (11th Cir.1995).

The district court determined that an abuse of trust was not inherent in the offenses of endeavoring to obstruction of justice or conspiring to obstruct justice. A person who is not a grand juror nor otherwise cloaked with a special duty by the judicial system could endeavor to obstruct justice in various ways. In

other words, there is no inherent requirement that a person hold a position of trust in order to be guilty of violating § 1503.

Second, the district court's decision that Brenson abused a position of public trust is reviewable under a clearly erroneous standard. 18 U.S.C. § 3742(d); *United States v. Terry,* 60 F.3d 1541, 1545 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 737, 133 L.Ed.2d 687 (1996). Grand jurors are specially selected to perform a vital function of the judicial process by serving as the small representative sample of the community at large assigned to listen to evidence of criminal activity, impartially weigh this evidence and determine if there is sufficient evidence to support an indictment of an individual. By performing this public duty, a grand juror assumes a position of public trust as to such responsibilities.

In applying § 3B1.3, the court should inquire as to whether or not the defendant used any special knowledge or access provided by his position of public trust to facilitate or conceal the offense. *United States v. Baker,* 82 F.3d 273, 277 (8th Cir.1996). "For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense." U.S.S.G. § 3B1.3, commentary, n. 1.

In this case, the controlling fact is that Brenson's position as a grand juror provided him with information on the evidence in the Fernandez investigation and facilitated the commission of this crime by providing Brenson with access to information that would otherwise not have been known to him. Brenson used his status as

a grand juror to endeavor to obstruct justice and emphasized to DeMaria that the reason DeMaria would want to listen to Brenson was because he was a grand juror. Likewise, when DeMaria requested a way to keep in touch with Brenson in order to stay informed, Brenson once again employed his status as a grand juror in making this illegal agreement. Had Brenson not been serving as a grand juror, Brenson would have had no way of providing ongoing information about the investigation to DeMaria and Fernandez.

Based on the evidence presented, the district court's determination that Brenson abused a position of public trust is not clearly erroneous. Therefore, we conclude that in this case the district court properly included a two level enhancement for abuse of trust pursuant to § 3B1.3.

d. Denial of Downward Adjustment For Acceptance of Responsibility

Finally, Brenson states that the district court erred in denying him a two or three level reduction in his offense level for "acceptance of responsibility." Relying on the fact that he admitted to federal agents shortly after his arrest that he revealed grand jury information, Brenson argues that he is entitled to the acceptance of responsibility reduction because he went to trial only to preserve the legal issue as to whether or not disclosing grand jury secrets was a per se violation of the obstruction of justice statute. According to Brenson, the district court mistook Brenson's legal arguments for a factual issue of intent. Additionally, Brenson points to the fact that he assisted authorities in the investigation and prosecution of his offense by "timely providing complete information to the government concerning

his own involvement in the offense," as set out in § 3E1.1(b)(1) and asserts that he is entitled to a three level reduction in his base offense level.

We review the district court's decision as to acceptance of responsibility only for clear error. *United States v. Arguedas,* 86 F.3d 1054, 1059 (11th Cir.1996). "The district court is in a unique position to evaluate whether a defendant has accepted responsibility for his acts, and this determination is entitled to great deference on review. Unless the court's determination is without foundation, it should not be overturned on appeal." *United States v. Pritchett,* 908 F.2d 816, 824 (11th Cir.1990); U.S.S.G. § 3E1.1, commentary, n. 5.

Pursuant to § 3E1.1 of the Guidelines, only a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct" may receive a downward adjustment for acceptance of responsibility. U.S.S.G. § 3E1.1(a). The evidence presented at trial demonstrates that immediately following his arrest, Brenson confessed to federal law enforcement agents that he had provided secret grand jury information to DeMaria and Fernandez. However, Brenson also agreed to assist in the investigation of DeMaria on the condition that he was not to inform anyone of his cooperation but sabotaged any covert investigation of DeMaria by telling a friend, Mario Palacio, to "get word" to DeMaria that he had been asked to cooperate against DeMaria. Brenson's attempted guilty plea came only moments before the trial proceedings were to begin and after a jury had been selected. The plea was aborted during the plea colloquy once

Brenson refused to acknowledge the necessary state of mind, i.e. that he had acted "corruptly" in disclosing this information.

The district court determined that while Brenson "has accepted some responsibility for some of the actions in this particular case, he has not accepted responsibility for all of his actions." (R13-53 to 54). In denying the downward adjustment, the district court acknowledged that while the defendant's insistence on going to trial was a factor, it does not prevent the defendant from being eligible for the downward adjustment. (R13-54.)

The comments to § 3E1.1 explain that there are "rare situations" where a defendant could adequately accept responsibility to qualify for a downward adjustment and proceed to trial. U.S.S.G. § 3E1.1, commentary, n. 2. Brenson argues that this case presents one such "rare situation." This court has relied on the commentary in stating that "[s]uch a rare situation may exist when a defendant goes to trial only to preserve issues that do not relate to factual guilt." *United States v. Gonzalez,* 70 F.3d 1236, 1239 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 1838, 134 L.Ed.2d 941 (1996). Brenson's decision to proceed to trial was not based on a challenge to the statute's application to his particular conduct as he has argued. Brenson's pre-trial statements demonstrate that he refused to admit that he had acted "corruptly" in disclosing this information. Therefore, Brenson put the government to its burden of proof at trial by denying an essential element of the crime, which directly relates to the factual guilt. Upon review of the record in this case, the district court's denial of the downward adjustment for acceptance

of responsibility was adequately supported and was not in error.

### III. CONCLUSION

Accordingly, we conclude that we lack jurisdiction to review the district court's refusal to grant a downward departure and AFFIRM the decision of the district court on all other grounds.