[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-15410

_____

D.C. Docket No. 05-00017-CR-002-HL-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee-
Cross-Appellant,

versus

CHARLES L. HARRELL,
a.k.a. Charles Ladon Harrell,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Georgia

_____

**(April 17, 2008)**

Before CARNES, BARKETT and HILL, Circuit Judges.

HILL, Circuit Judge:

Charles Harrell appeals the reasonableness of his sixty-month sentence for obstruction of justice, in violation of 18 U.S.C. § 1503, and the United States cross-appeals, challenging the district court's Sentencing Guideline calculation. We review a sentencing court's interpretation of the guidelines *de novo*, giving due deference to the district court's application of the guidelines to the facts. *United States v. Crawford*, 407 F.3d 1174, 1177-78 (11th Cir. 2005). We review the district court's finding of facts for clear error. *Id.*

I.

In 2005, Charles Harrell ("Charles"), his son Martin L. Harrell ("Martin") and his son's long-time friend W. Dexter Harrison, were indicted in a thirteen-count superseding indictment involving three incidents.[1] Charles and Martin were charged with conspiring to interfere with interstate commerce by threats, intimidation, and extortion, in violation of 18 U.S.C. § 1951(a)(the "Hobbs Act offenses"). The indictment alleged that in 1999, Martin, who raised cattle commercially, had contracted to raise cattle for another farmer, William Chandler. However, at the end of the contract, Martin and Chandler disagreed on the amount

---

[1]Charles Harrell and Martin Harrell had each been indicted previously in separate indictments. The superseding indictment consolidated their counts and added W. Dexter Harrison.

Martin was to be paid. As a result, it was alleged, Martin and Charles threatened and intimidated Chandler and his wife and daughter. The indictment alleged that Martin and Charles hired two men who lured Chandler and his wife from their home and assaulted them. One of these men was apprehended and convicted; the other, Bobby Powell, disappeared and has never been found.

The superseding indictment also charged Martin and Harrison with conspiring to commit arson and mail fraud, in violation of 18 U.S.C. §§ 371, 844(i) and 1341, and Count 7 charged committing arson, in violation of 18 U.S.C. § 844(i). The indictment alleged that Harrison hired Martin to set fire to Harrison's motel for insurance purposes, that Martin set the motel on fire while it was occupied, and that both Martin and Harrison made false statements to conceal these acts during the government's investigation.

Finally, the superseding indictment charged Charles with witness tampering, in violation of 18 U.S.C. § 1512(b)(3), alleging that Charles had intimidated or threatened his daughter-in-law, Julie Harrell ("Julie"), Martin's wife, to prevent her from helping the authorities with the prosecution of the extortion and arson offenses.[2] The indictment alleged that Charles called Julie to his home and had a

_____

[2]The remaining counts of the indictment, which included charges of mail fraud, witness tampering, interfering with interstate commerce, and making misleading statements, are not relevant to this appeal.

3

conversation with her in which he demanded that she give him a copy of the grand jury subpoena she received in connection with the arson charges against Martin, attempted to learn from her the identities of confidential witnesses, and tried to persuade her not to cooperate with the government in its investigation and prosecution of Martin.

While Charles was awaiting trial in jail on these charges, he contacted his girlfriend, Kearsley Doughty, several times.[3] Although Charles knew that Doughty was not present during his entire "witness tampering" conversation with Julie Harrell, he attempted to persuade Doughty to testify to his version of the facts regarding this conversation.

Charles, Martin and Harrison went to trial on the arson-related charges and Charles' charge of tampering with Julie Harrell's testimony in February of 2006.[4] The jury convicted Harrison on all charges, convicted Martin of four of the charges (including the arson), and acquitted Charles of witness tampering.[5]

In May, the government filed a superseding information against Charles,

---

[3]Although initially released to await trial, Charles was re-arrested after again contacting Julie Harrell in violation of the district court's conditions of release.

[4]The district court severed the Hobbs Acts offenses into a separate trial.

[5]In May, before a second trial on the remaining counts was held, Martin plead guilty to the Hobbs Act conspiracy and the government dropped the remaining charges against him.

charging him with one count of obstruction of justice for attempting to convince Kearsley Doughty to support his version of the alleged witness tampering conversation he had with Julie Harrell. In June, he plead guilty to this charge, and the government dropped the remaining Hobbs Act charges.

The plea agreement contained the following stipulation of facts, which the parties agreed did not bind the district court:

> [During a period of time preceding his trial for witness tampering under Count 4 of the indictment, Harrell corruptly] encouraged his fiancee, Ms. Kearsley Doughty to testify to his version of facts of which she had no personal knowledge . . . [and which he hoped] would bring about his acquittal . . . . In particular, while incarcerated on the charges in the indictment, [Harrell] wrote numerous letters to, and had numerous telephone conversations with, [Doughty] in which he encouraged her to give testimony at trial. Many of these conversations were recorded . . . . In [one] letter . . . , [Harrell] wrote out his version of events and asked her to give answers consistent with [it, if she testified]. [Doughty] had already told [Harrell] that she didn't hear all of their conversation between [him and his daughter-in-law] which resulted in the witness tampering charges . . . . Further, [she] had already told [him] that she had told his counsel that she was not in the same room where the dispute . . . started. [Harrell] replied . . . in a recorded conversation, "That's just my lawyer."

At sentencing, the government contended that Charles' base offense level should be calculated under the Obstruction of Justice Guideline, § 2J1.2, but should also be cross-referenced to several other guideline sections, including those for arson, the Hobbs Act offenses, and first-degree murder. The government

5

argued that the cross-referencing was mandatory because Charles' obstruction occurred "in respect to" these other underlying crimes. The Preliminary Sentencing Report (the "PSR"), however, took the position that Charles' conviction for obstructing justice by tampering with Doughty's potential testimony related only to the crime of tampering with Julie Harrell's testimony. In essence, the PSR took the position that Charles had obstructed only an obstruction prosecution.

Over the government's objection, the district court accepted this argument and refused to increase Charles' base offense level by reference to the other crimes charged in the superseding indictment or the murder investigation. The government appeals this sentencing decision. Charles appeals the reasonableness of his sentence.[6]

## II.

Sentencing for obstruction of justice under § 2J1.2 of the Guidelines,[7] provides in part that:

(c)     Cross Reference

---

[6]The district court, after considering the appropriate guideline factors, granted an upward variance and sentenced Charles to sixty months in prison.

[7]Although the Guidelines are advisory only, they must still be calculated correctly in order for the district court to give them the appropriate consideration. *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005).

(1)     If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined above.[8]

Section 2X3.1 specifies that the base offense level for calculating the defendant's sentence is six levels lower than the offense level "for the underlying offense."  This means that the base offense level for the obstructing defendant is six levels lower that the offense level for the crime the prosecution of which the defendant attempted to obstruct.  *United States v. Pompey*, 17 F. 3d 351, 353 (11th Cir. 1994).

The reason for the cross-reference is because "the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense."  *United States v. Brenson*, 104 F.3d 1267, 1285 (11th Cir. 1997).  The cross-reference allows the sentencing court "to weigh the severity of one's actions in obstructing justice based on the severity of the underlying offense that was the subject of the judicial proceeding sought to be obstructed, impeded or influenced."  *Id.*  The question is, then, what underlying crime(s) did Charles attempt to obstruct

---

[8]This cross-referencing is to occur "without any qualification and without regard to whether defendant or anybody else was convicted of the underlying offense, or whether an offense could be shown to have been committed at all."  *United States v. McQueen*, 86 F.3d 180, 182 (11th Cir. 1996).

7

by tampering with Doughty's testimony.

Doughty's false testimony, if given, would have gone to negate the charge against Charles of tampering with the witness, Julie Harrell. The government argues, however, that Charles was also attempting to obstruct the arson and Hobbs Act offenses, for which he, Martin and Harrison were awaiting trial, as well as the Bobby Powell possible murder prosecution. The issue is whether Charles' obstruction can be held to be "in respect to" these crimes.

Although never articulated very clearly, the government's theory appears to be that Charles' attempt to get Doughty to testify falsely had the potential to derail the government's prosecution of the arson, Hobbs Act offenses, and Bobby Powell's possible murder by undermining the credibility of Julie Harrell. Julie Harrell was the government's star witness against Charles, Martin and Harrison on the arson and Hobbs Act charges. She was to testify about Martin, her husband's, activities the night of the motel arson – including that he went out late at night in his own vehicle and returned several hours later in his father's vehicle, reeking of diesel fuel. She would relate how she discovered Martin's clothes the next morning in the washing machine, with a ring of diesel residue in the tub. She would testify to her confrontation with Martin, during which he threatened that she would wind up dead if she ever told anyone what she had seen. She also was

8

prepared to testify that Martin told her that he and his father hired a "hit man" to attack Chandler. She also had audio tapes in which she recorded conversations with Martin concerning the disappearance of Bobby Powell and disposal of his body.

If Julie's testimony was credited by the jury, the defendants would likely be convicted. On the other hand, the prosecution of Charles, Martin and Harrison would have been severely undermined if the jury did not believe her testimony about the arson and the attack on Chandler.

In addition to testifying to the events described above, however, Julie Harrell was to testify against Charles on the charge that he attempted to tamper with her testimony. Julie was to relate her version of her conversation with Charles during which she said that he attempted to persuade her not to cooperate with the government in its investigation and prosecution of Martin.[9] Charles' attempt to persuade Doughty to testify that she overheard this conversation and that Julie's version of it was not true was an attempt to contradict Julie's testimony, thereby negating the first witness tampering charge against him.

However, if successful, this attack on Julie's testimony regarding the witness tampering charge might also have had the effect of undermining Julie's

---

[9]At the time of this conversation, only Martin had been indicted.

credibility generally. If the jury believed Doughty's version of the conversation, it might conclude that Julie was not a credible witness. If Julie's credibility were put in doubt, there was a very real possibility that the jury might reject her testimony on the arson-related charges. In this event, the government's prosecution of those charges might have been derailed.

For the obstruction of justice to be "in respect to" the crimes urged by the government to be cross-referenced, the obstruction of justice must have had the potential to disrupt the government's investigation or prosecution of those crimes. Charles' attempt to get Doughty to testify falsely had the potential not only to have him acquitted of witness tampering with Julie, but also to have Martin and Harrison acquitted of the arson-related charges. Therefore, Charles' conviction for obstructing justice by attempting to persuade Doughty to testify falsely was "in respect to" his charge of witness tampering with Julie, but also the arson-related charges against Martin and Harrison.

The government, however, argues that the Hobbs Act offenses as well as the murder of Bobby Powell are also properly cross-referenced to Charles' conviction for tampering with Doughty's testimony. We disagree. The Hobbs Act offenses had been severed from the trial of the Julie Harrell witness tampering charge and arson-related offenses. Therefore, Charles' efforts to undermine Julie Harrell's

10

credibility before the jury in that trial could have had no impact on a later trial on the Hobbs Act offenses. There would be no Julie Harrell witness tampering count in that trial, and, therefore, no occasion for Doughty to testify in an attempt to undermine Julie's credibility. Therefore, the Doughty witness tampering conviction under review here was not "in respect to" the Hobbs Act offenses.

Nor did Charles' attempt to undermine Julie's credibility in the first trial have the potential to derail the investigation of Powell's disappearance, since the government clearly did not believe Doughty and did believe Julie Harrell (as evidenced by its charging Charles with witness tampering for his efforts to get Doughty to undermine Julie's testimony).

We conclude, therefore, that, for purposes of sentencing, the base level for Charles' present obstruction of justice conviction must be cross-referenced to the appropriate guidelines for the arson-related charges the government was prosecuting in the trial in which Charles sought to undermine Julie Harrell's testimony. On remand, the district court is instructed to calculate his base offense level at six levels lower than the most serious of these crimes. *See McQueen*, 86 F.3d at 184 (where cross-referencing required, and more than one offense applicable, the most serious offense is to be used, citing U.S.S.G. § 1B1.5, commentary, n.3).

11

Because we vacate Harrell's sentence due to the district court's incorrect application of the Guidelines, we need not consider whether that sentence was unreasonable, as he contends.

III.

Accordingly, the sentence of the district court is vacated, and the case is remanded to the district court for recalculation of the sentence in accordance with this opinion.

VACATED AND REMANDED.