[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 20, 2011
JOHN LEY
CLERK

No. 11-10746
Non-Argument Calendar

_____

D.C. Docket No. 8:10-cr-00084-VMC-EAJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOANNE GONZALEZ,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 20, 2011)

Before MARCUS, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Joanne Gonzalez appeals her sentences for obstruction of justice, in violation of 18 U.S.C. § 1503, and five counts of making false statements, in violation of 18 U.S.C. § 1623. On appeal, Gonzalez argues that the district court erred by applying a cross-reference in the obstruction of justice guideline, U.S.S.G. § 2J1.2(c)(1), that called for her offense level to be determined using the accessory after the fact guideline, U.S.S.G. § 2X3.1. She also contends that the district court clearly erred in finding, for sentencing enhancement purposes, that she knew or reasonably should have known that the robbery offense that was the subject of her perjured grand jury testimony had involved the discharge of a firearm, physical restraint of victims, a substantial risk of bodily injury to law enforcement, and reckless endangerment during flight. For the reasons set forth below, we affirm.

I.

The following facts are taken from the presentence investigation report ("PSI") and the evidence presented by the government at Gonzalez's trial. In the early morning hours of August 18, 2007, Frederick Wardell Mitchell, Leonardo Jackson, and Roberto Amaguer robbed a Tampa Waffle House restaurant at gunpoint. Two of the restaurant's employees were taken into a back room by Amaguer. The three robbers carjacked a Ford Bronco belonging to one of the

robbery victims and fled north along the interstate with five police cruisers in hot pursuit.

After a brief high-speed chase, Jackson abruptly stopped the Bronco and he, Mitchell, and Amaguer climbed out of the vehicle. The officers chased the suspects on foot as they fled down an embankment and jumped over a chain-link fence. Suddenly, Mitchell turned and pointed a firearm at the officers, and one of the three suspects discharged a firearm. The police returned fire, hitting Amaguer in his leg and Mitchell in his lower back. Amaguer was apprehended at the scene but Mitchell and Jackson managed to escape. Later that morning, Mitchell was admitted to a hospital in Orlando with a gunshot wound.

Cellular telephone records showed a number of calls between Mitchell's cellular telephone and telephone number (813) 263-2117 in the hours following the robbery. Gonzalez was listed as the subscriber of that number. The records also showed that Gonzalez's telephone made a number of calls from Orlando on the morning of the robbery. The implication was that Gonzalez had driven Mitchell from Tampa to the hospital in Orlando.

On August 24, two detectives spoke with Gonzalez at her home. The detectives informed Gonzalez of the nature of their investigation. Gonzalez denied speaking to Mitchell on the day of the robbery, but she acknowledged that

the telephone number (813) 263-2117 was hers.  Gonzalez stated that Mitchell had been to her home a few days after the robbery but did not appear to be injured at that time.

On September 10, 2009, Gonzalez was called to testify before a grand jury. The Assistant U.S. Attorney ("AUSA") explained to Gonzalez that the grand jury was "investigating the case against Frederick Wardell Mitchell and Leonardo Jackson," and asked her a series of questions about her interactions with Mitchell in the hours following the Waffle House robbery. In her testimony, Gonzalez made a series of false statements.  First, Gonzalez denied that the telephone number (813) 263-2117 belonged to her.  Next, she acknowledged that Jackson had come to her house after the robbery, but she falsely stated that he did not mention the robbery to her and did not appear to have been shot.  Gonzalez also falsely testified that she did not have any telephone conversations with Mitchell's mother after the robbery.  Finally, Gonzalez falsely denied calling any hospitals on the morning of the robbery.

In calculating Gonzalez's guideline range, the presentence investigation report ("PSI") grouped all six counts of conviction together.  The PSI used the obstruction of justice, U.S.S.G. § 2J1.2, because that guideline resulted in the highest offense level.  The PSI then applied a cross-reference in § 2J1.2(c)(1) that

4

explains that a defendant's offense level should be determined under the accessory after the fact guideline, § 2X3.1, if the offense "involved obstructing the investigation or prosecution of another criminal offense." Under § 2X3.1(a)(1), in turn, a defendant's base offense level is calculated by subtracting six levels from the adjusted offense level of the underlying offenses. Thus, to determine Gonzalez's base offense level, the PSI had to calculate the offense level for the underlying armed robbery and armed carjacking offenses for which she obstructed justice.

The PSI grouped the armed robbery and armed carjacking separately because each offense resulted in different harms. With respect to the armed robbery, the PSI calculated a base offense level of 20 under § 2B3.1(a), then added: (1) a 7-level enhancement for discharge of a firearm, § 2B3.1(b)(2)(A); (2) a 2-level enhancement for physical restraint of victims, § 2B3.1(b)(4)(B); (3) a 6-level enhancement for creating a substantial risk of serious bodily injury to law enforcement, U.S.S.G. § 3A1.2(c); and (4) a 2-level enhancement for reckless endangerment during flight, U.S.S.G. § 3C1.2, resulting in an adjusted offense level of 37. (*Id.* ¶ 29). The PSI's calculations for the armed carjacking were identical to its calculations for the armed robbery, except that the PSI substituted a two-level enhancement for carjacking under § 2B3.1(b)(5) for the two-level

enhancement for physical restraint of victims.

After applying the rules for grouping multiple counts, the PSI arrived at a combined adjusted offense level of 39. Normally, the PSI would have subtracted six levels from that adjusted offense level to calculate Gonzalez's base offense level under the accessory-after-the-fact guideline. However, § 2X3.1(a)(3)(A) caps a defendant's offense level at 30, so Gonzalez had an offense level of 30. Gonzalez had a criminal history category of II. These calculations produced a guideline range of 108 to 135 months' imprisonment.

Gonzalez did not object to the factual accuracy of the PSI but did object to the application of the cross-reference in § 2J1.2(c)(1). Gonzalez also asserted that the PSI should not have applied specific offense characteristics for discharge of a firearm, physical restraint of victims, a substantial risk of bodily injury to law enforcement, or reckless endangerment during flight because there was no evidence that she knew that the Waffle House robbery had involved those elements. The government responded that Gonzalez knew or should have known about the aggravating circumstances of the robbery because she lived close enough to hear the sirens and shooting, and immediately after the robbery, Mitchell showed up at her home with a gunshot wound. The government observed that it would have been unreasonable for Gonzalez to think that Mitchell had

robbed the Waffle House without a gun. The district court stated that it had given Gonzalez's arguments a great deal of thought, but was overruling her objection for the reasons outlined by the government. The district court varied downward from the guideline range and sentenced Gonzalez to concurrent terms of 48 months' imprisonment on all six counts of conviction.

## II.

We review the district court's interpretation and application of the Sentencing Guidelines *de novo*, and the district court's findings of fact for clear error. *United States v. Harrell*, 524 F.3d 1223, 1224-25 (11th Cir. 2008). The obstruction of justice guideline, U.S.S.G. § 2J1.2, provides: "If the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater than that determined [under § 2J1.2]." U.S.S.G. § 2J1.2(c)(1). The cross-reference applies whenever the defendant's obstruction had the potential to disrupt the investigation or prosecution of the underlying offense. *Harrell*, 524 F.3d at 1228. Other Circuits have suggested that the cross-reference should be applied in cases of perjured grand jury testimony only if the defendant was placed on notice as to the offenses that the grand jury was investigating. *See, e.g.*, *United States v. Suleiman*, 208 F.3d 32, 39-40 (2d Cir.

7

2000) ("[A]s long as the witness has been alerted to the fact that the grand jury is investigating a criminal offense, false answers to material questions will almost always merit enhanced punishment."); *United States v. Blanton*, 281 F.3d 771, 776 (8th Cir. 2002) (explaining that "a witness is put on notice [that a grand jury is investigating a particular offense] when an AUSA informs that witness of the nature of the grand jury's inquiry either prior to or during her grand jury testimony").

In this case, Gonzalez was put on notice that the grand jury was investigating the Waffle House robbery. The AUSA informed Gonzalez that the grand jury was investigating Mitchell's and Jackson's crimes, and most of the questions posed to her concerned her interactions with Mitchell in the immediate aftermath of the robbery. Thus, Gonzalez's lack of notice argument is meritless.

In addition, the district court did not clearly err by concluding that Gonzalez's perjury could potentially have obstructed the investigation and prosecution of the Waffle House robbery. Gonzalez testified that Mitchell did not contact her shortly after the robbery and that he did not appear to have been shot the next time that she saw him. If the grand jury had credited that testimony, it may have concluded that Mitchell was uninvolved in the robbery, and declined to indict him in connection with that offense. At the very least, Gonzalez's testimony

8

misled the grand jury as to what Mitchell did after he escaped from the police. Accordingly, we conclude that the district court properly applied the cross-reference in U.S.S.G. § 2J1.2(c)(1). In light of the foregoing, we need not address the government's alternative invited-error argument.

III.

We review the district court's factual findings for clear error, and its application of the Sentencing Guidelines to those facts *de novo*. *Harrell*, 524 F.3d at 1224-25. If the defendant objects to the contents of his PSI, the district court must either rule on the objection or state that such a ruling is unnecessary because the court will not consider that matter in determining the defendant's sentence. Fed.R.Crim.P. 32(i)(3)(B). The accessory after the fact guideline provides that a defendant's base offense level is six less than the offense level for the underlying offense. U.S.S.G. § 2X3.1(a)(1). The offense level for the underlying offense is calculated by taking the base offense level and then adding "any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." *Id.*, comment. (n.1).

In this case, the district court ruled on Gonzalez's objection to the specific offense characteristics by adopting the government's response to her objection. Thus, to the extent that Gonzalez is contending that the district court failed to

9

make sufficient findings as to this issue, her argument fails.

With respect to the merits of this issue, the government did not present much direct evidence as to what Gonzalez knew about the Waffle House robbery at the time of her grand jury testimony. The government was able to show, however, that Gonzalez had several telephone conversations with Mitchell in the aftermath the robbery. In addition, cellular telephone records suggest that Gonzalez drove Mitchell to a hospital in Orlando. A few days later, Gonzalez spoke with law enforcement officers who informed her of the nature of their investigation. Thus, by the time of her grand jury testimony, Gonzalez knew that Mitchell robbed the Waffle House, and was shot while attempting to flee. From those facts, she reasonably should have concluded that the robbery had involved the discharge of a firearm, a serious threat of physical injury to law enforcement, and reckless endangerment during flight. Therefore, the district court did not err in imposing those particular enhancements.

The two-level enhancement under § 2B3.1(b)(4)(B) for restraint of victims presents a closer question. The fact that Gonzalez knew that Mitchell had robbed the Waffle House does not prove that she knew or reasonably should have known that victims were restrained. Nevertheless, we need not determine whether the district court erred by applying that particular enhancement because any error

10

in applying that enhancement did not affect Gonzalez's guideline range.  If the district court had not imposed the § 2B3.1(b)(4)(B) enhancement, Gonzalez would have had an adjusted offense level of 35 with respect to the armed robbery, and 37 with respect to the armed carjacking.  After applying the unit grouping rules in § 3D1.4, and the 6-level reduction in § 2X3.1(a)(1), she would still have had a combined adjusted offense level of 39.  The district court would have applied the cap in § 2X3.1(a)(3)(A) and reduced Gonzalez's base offense level to 30, resulting in the same guideline range that she actually received.

Accordingly, after review of the record and the parties' briefs, we affirm Gonzalez's sentences.

**AFFIRMED.**